**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PETER BROWN,
              *Plaintiff-Appellee,*

v.

J. VALOFF,
              *Defendant-Appellant.*

No. 03-16502

D.C. No.
CV-01-06526-OWW

OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Submitted November 2, 2004*
San Francisco, California

ROBERT HALL,
              *Plaintiff-Appellee,*

v.

J. W. FAIRMAN, JR.,
              *Defendant,*

and

J. MATTINGLY; A. C. QUINONES; A.
VALENZUELA; C. DAVIS; L. R.
LOPEZ; C. SMITH; E. TOSTADO; G.
ZINANI,
              *Defendants-Appellants.*

No. 03-16552

D.C. No.
CV-99-05780-AWI/
SMS

OPINION

---

   *The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

12343

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted
November 2, 2004—San Francisco, California

Filed September 6, 2005

Before: Stephen Reinhardt, David R. Thompson, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon;
Partial Concurrence and Partial Dissent by Judge Reinhardt

## COUNSEL

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Frances T. Grunder, Senior Assistant Attorney General, James E. Flynn, Supervising Deputy Attorney General, and David A. Carrasco, Deputy Attorney General, Sacramento, California, for the defendant-appellant in Case No. 03-16502.

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Frances T. Grunder, Senior Assistant Attorney General, Sara Tuner, Supervising Deputy Attorney General, and Barbara N. Sutliffe, Deputy Attorney General, San Francisco, California, for the defendants-appellants in Case No. 03-16552.

Peter Brown, pro se, Vacaville, California, plaintiff-appellee in Case No. 03-16502.

Thomas L. Riordan, Thadd Blizzard, and Charles L. Post, Weintraub Genshlea Chediak Sproul, Sacramento, California, for the plaintiff-appellee in Case No. 03-16552.

## OPINION

BERZON, Circuit Judge:

We consider the application of the Prisoner Litigation Reform Act's ("PLRA") exhaustion requirement, 42 U.S.C. § 1997e(a), to circumstances in which an inmate has filed a grievance with a prison grievance system and, having received some relief before the final level of review, does not pursue his grievance further. In these two cases with similar but somewhat different factual backgrounds, the district courts certified interlocutory appellate review. We accepted jurisdiction and have consolidated them for purposes of decision. We conclude that Peter Brown adequately exhausted the available grievance process but Robert Hall did not.

## BACKGROUND

We begin by providing a brief overview of the California Department of Corrections' ("Department") internal grievance system and of the factual background of each case.

1.   *Grievance system:* California's Department of Corrections provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within fifteen working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal. Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c).[1] If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal

---

[1]There are eight situations in which attempted resolution at the informal level is not required. *See* Cal. Code Regs., tit. 15, § 3084.5(a)(3). As relevant here, the informal level is not required when a grievance involves "[a]lleged misconduct by a departmental peace officer." *Id.* § 3084.5(a)(3)(G).

level, usually conducted by the prison's Appeals Coordinator. *Id.* §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections.[2] *Id.* § 3084.5(e)(1)-(2).

2.  *Brown's case:* Appellee Peter Brown's district court complaint states that Correctional Officer Valoff used tear gas and assaulted him on February 24, 1999. He claims that the alleged assault violated his Fourteenth Amendment rights to due process and equal protection and the Eighth Amendment's prohibition of cruel and unusual punishment.

Brown made the same allegations in his formal grievance filed with prison officials in the summer of 1999.[3] In the "Action Requested" portion of the form, Brown stated simply: "I respectfully request to be compensated for these abuses, and

---

[2] Department of Corrections regulations provide that "[t]he decisions of the Departmental Review Board which serve as the director's level decision, are not appealable and conclude the inmate's or parolee's departmental administrative remedy pursuant to section 3376.1." Cal. Code Regs., tit. 15, § 3084.1(a); *see also id.* § 3084.5(e)(2) ("Third level review constitutes the director's decision on an appeal, and shall be conducted by a designated representative of the director under supervision of the chief, inmate appeals.").

[3] Brown's description of the incident stated:

> Correctional officer J. Valoff, with his actions, violated policy and procedure, Use of Force, and, Use of Tear Gas. His deliberate actions punished me with out affording me proper due process and equal protection rights. Officer Valoff, subjected me to cruel and unusual punishment by physically assaulting me, and, spraying me with his "chemical agent", o.c. spray without probeble [*sic*] cause, or, any threat being made to his person by petitioner which is supported by petitioner being found not guilty, and, Officer Valoff's floor partner's statement, Officer S. Pulliam.

Brown then went on to describe the "[p]sychological, [e]motional, [m]ental, [p]hysical pain and anguish" that he suffered as a result of the incident.

blatant disregard for my constitutional rights." The response, on the same form that Brown submitted,[4] was marked "Denied." The accompanying memorandum stated:

> You have failed to provide compelling information to substantiate your allegations of staff misconduct. In the event of staff misconduct, the institutional supervisory and administrative staff will take the appropriate course of action. However, this would be confidential information, which would not be released to the appellant. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding the staff or the placement of documentation in a staff members [*sic*] personnel file is beyond the scope of the appeals process.

Brown pursued the second level of review within a week of receiving the first response. He continued to allege that Officer Valoff used excessive force against him.[5] He received a second level, Warden's level decision on December 13, 1999, stating that the "Appeal Decision" was "Partially Granted."[6]

---

[4]The Department's grievance appeals process appears to require an inmate to continue using the same pre-printed form at each level of review with the option to submit attachments. When a decision is reached, a Department official informs the grievant by marking one of four checkboxes — "Granted," "P. Granted," "Denied," and "Other" — and signs and dates the form.

[5]Brown also noted that he was found "not guilty" on charges related to the events of February 24. We assume that he referred to the results of an internal Department disciplinary hearing, a report of which is included in the record, that indicates that Brown was found not guilty of battery charges. In addition, the record includes a memorandum from the Kings County District Attorney's office indicating that it had declined to pursue charges against Brown for assault.

[6]The Corcoran Appeals Coordinator responded on the Warden's behalf. *See* Cal. Code Regs., tit. 15, § 3084.5(e)(1) (noting an institution head may appoint a designee to respond to inmate appeals).

Identifying the "Appeal Issue" as "Staff Complaint," the attached memorandum stated:

> A thorough investigation will be conducted into your allegations and evaluated in accordance with Departmental Policies and Institutional Procedures. The matter has been referred to the Office of Internal Affairs. You shall be notified by the Office of Internal Affairs of the disposition of your complaint upon completion of the investigation, in accordance with [California Penal Code §] 832.7 and the Department Operations Manual Section 31140.4.2.[7]

> It is the Administration's responsibility to determine appropriate action taken against any employee, if deemed necessary. Additionally, inmates are not apprised of any disciplinary action that may have been taken against a staff member. It is beyond the

---

[7]We take judicial notice of the Department Operations Manual. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

In relevant part, the cited regulation states that it is the responsibility of the Department's Hiring Authority to

> [e]nsure that every complaint or allegation of employee misconduct receives prompt and thorough attention including contact with the complainant notifying them of the finding, i.e., sustained, not sustained. This notification shall include the definition of the finding as discussed in [Department Operations Manual] 31140.14. Since existing law prohibits disclosure of any specific personnel action taken, the complainant may only be advised that "appropriate administrative action has been taken." Pursuant to [California Penal Code] § 832.7 and 832.8 and EC 1043 through 1045(e), at no time should specifics relating to any personnel action be discussed with a complainant in the matter.

Department of Operations Manual ("DOM") § 31140.4.2, *available at* http://www.corr.ca.gov/RegulationsPolicies/PDF/DOM/ 00_dept_ops_maunal.pdf (last visited Aug. 26, 2005).

scope of the appeals process to grant you monetary compensation.

Brown did not proceed to the third level of review, that of the Director of the Department of Corrections or his designee. He did, however, inquire about the status of the promised investigation by requesting information from the California Office of the Inspector General. He received a letter from that office stating,

> This office contacted the California State Prison at Corcoran, and learned that an investigation was in fact conducted and completed. However, due to confidentiality laws, Corcoran investigators were unable to share the specific details of the investigation with you. Confidentiality laws also prevent us from further disclosing any information regarding this investigation.

Brown next proceeded, *pro se* and *in forma pauperis*, to federal court, under 42 U.S.C. § 1983. As noted above, his complaint alleged that Officer Valoff's actions on February 24, 1999 violated the Eighth Amendment and his rights to due process and equal protection under the Fourteenth Amendment. After the case was transferred to the district court for the Eastern District of California, Valoff filed a motion to dismiss, arguing that Brown had failed to comply with the PLRA exhaustion requirement.

Magistrate Judge O'Neill made findings and recommendations suggesting that the district court deny Valoff's motion. He reasoned that Brown's completion of second level review was sufficient to comply with the PLRA exhaustion requirement, as "[t]he response contains no language suggesting that plaintiff could appeal the decision to the third level of review[, and] it is unclear what would be left to appeal, as plaintiff's appeal was partially granted and an investigation was to be conducted."

Ruling on Valoff's objections to the Magistrate's report, the district court agreed that Valoff was "not entitled to dismissal of this action." The court explained that Brown had exhausted his claims within the Department's grievance system because "[p]laintiff's inmate appeal grieved the facts at issue in this suit," and "in granting plaintiff's appeal in part and referring the complaint for investigation by the Office of Internal Affairs, plaintiff was provided all of the relief that the administrative process could provide."

The district court granted Valoff's motion to certify his interlocutory appeal to this court, and we accepted the appeal.

3. *Hall's case:* Robert Hall is a former inmate of the Department's Corcoran Substance Abuse and Treatment Facility. On September 2, 1998, Hall and his cellmate were, allegedly, severely beaten and exposed to pepper spray during a forced removal from their cell. Hall claims that he suffered extensive injuries following the incident.

Hall filed a grievance, providing a detailed description of his alleged mistreatment, on September 8, 1998. Under the section marked "Action Requested," Hall listed: (1) a $35,000 fine imposed on Sergeant Valenzuela and his removal or demotion; (2) a $50,000 fine of the Corcoran Substance Abuse Treatment Facility, and (3) an investigation of the extraction team that assaulted him. Hall filed a second grievance on December 4, 1998, virtually identical to the first except that in the "Action Requested" section, Hall asked that Sergeant Valenzuela be fined $30,000 instead of $35,000. In both grievance forms Hall also complained that after the alleged mistreatment, he did not receive adequate medical treatment and his property was removed from his cell.

In response to Hall's grievances, prison officials bypassed the informal review level. Hall received a first level response to his grievances on January 26, 1999.[8] The memorandum

---

[8]The Department consolidated Hall's grievances and decided them together in the first level response.

issued to Hall described the "Appeal Issue" as follows: "You request to have an Internal Affairs Investigation initiated and to hold responsible Officials accountable for their actions." In the section marked "Appeal Decision," the memorandum stated that Hall's requests were "Denied." The memorandum also described the treatment of "staff personnel matters." It stated:

> All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public, or the inmate population. In the event of staff misconduct, the institutional supervisory and administrative staff will take the appropriate course of action. However, this would be confidential information, which would not be released to the appellant. Although the appellant has the right to submit an appeal as a staff complain [*sic*], the request for administrative action regarding the staff or the placement of documentation in a staff members [*sic*] personnel file is beyond the scope of the appeals process.

The memorandum further counseled Hall, "[i]f you are dissatisfied with this decision, you may complete section 'H' of your appeal and forward it for further review by following the directions of your appeal form." Hall did as advised, triggering further review at the second level.

A second level response was issued to Hall on March 18, 1999. The accompanying memorandum described the "Appeal Issue" as follows:

> You allege that Sgt. Valenzuela used excessive force on you during the cell extraction on 9/2/98 and called you "nigger" as he beat you in your face with his fists. You request that the cell extraction team be investigated for excessive use of force, that Sgt.

Valenzuela be demoted, that he be fined $30,000, and that the warden be fined $50,000.

Under the section heading "Appeal Response," the memorandum stated, in part:

Your appeal is being answered as a staff complaint. If the appeal contains other issues as well, i.e., disciplinary or property issues, the other issue(s) must be appealed separately. This is in accordance with Administrative Bulletin 98/10, issued August 21, 1998.[9]

Your allegations of staff misconduct have been referred for investigation. You will be notified by the Investigative Services Unit only of the conclusion of the investigation.

The second level response memorandum included the same

---

[9]We take judicial notice of the cited Administrative Bulletin. *See O'Neill*, 386 F.3d at 1224 n.2. It sets forth Department procedures for addressing allegations of staff misconduct in the grievance process, providing, in relevant part:

The hiring authority, or designee, shall review the allegation and determine if:

The allegation warrants a formal . . . investigation. When an allegation warrants a formal investigation, the appeals coordinator shall bypass the First Level of Review, respond at the Second Level of Review . . . and refer the case for formal investigation as instructed by the hiring authority. The Second Level Response shall note that the appeal was granted or partially granted (depending upon the action requested by the appellant) and the response shall consist of generic language . . . .

*Processing of Inmate/Parolee Appeals, CDC Forms 602, Which Allege Staff Misconduct*, Cal. Dep't of Corr. Administrative Bulletin 98/10, *available at* http://www.corr.ca.gov/regulationspolicies/PDF/ABs/1998ABs/98-10%20Processing%20of%20Inmate%20Parolee%20Appeals%20 CDC%20Form%20602%20Whic.pdf (last visited Aug. 26, 2005).

language on the treatment of "staff personnel matters" as had the first level memorandum. Finally, the response stated: "Considering the above information, your appeal is denied at the second level of review. If you are dissatisfied with this decision, you may complete section 'H' of your appeal and forward it for further review by following the directions on the back of your appeal form."

On June 7, 1999, Hall filed a complaint, *pro se*, in the District Court for the Eastern District of California alleging Eighth Amendment and due process violations. After several amended complaints had been filed, the defendants submitted a joint unenumerated Rule 12(b) motion asserting that Hall had failed to exhaust administrative remedies as required by § 1997e(a).

On November 2, 2000, while the case was pending, the investigation ordered as a result of Hall's second level review was completed. Hall received notice of the results of the internal affairs investigation on July 2, 2001. The notice stated that Hall's allegations had been "partially sustained."

Magistrate Judge Snyder issued her findings and recommendations to District Court Judge Ishii on February 18, 2003. She concluded that Hall had met the exhaustion requirement, finding that "the court cannot find that it was necessary for him to continue pursuing his appeal." Magistrate Judge Snyder noted that she found the second level response to be "inconsistent with a true and complete denial," and concluded that "[p]laintiff's inmate appeal grieved the facts at issue in this suit and to the extent the process could provide plaintiff with relief on the complaint stated, it provided such relief when plaintiff's allegation of staff misconduct was referred for investigation."

On April 7, 2003, the district court adopted Judge Snyder's findings and recommendations in full. The district court later

granted the defendant's motion to allow an interlocutory appeal, and we accepted the appeal.

## DISCUSSION

### I.

Congress, through the PLRA, changed in some significant respects the rules that had been previously applicable in federal court for prisoner suits challenging the conditions of confinement. Of pertinence here is amended § 1997e(a), which creates "a general rule of exhaustion" for prisoner civil rights cases. *Porter v. Nussle*, 534 U.S. 516, 525 n.4 (2002).

[1] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The question before us is whether Brown and Hall properly exhausted "such administrative remedies as are available" before proceeding to the district court.

[2] Two Supreme Court decisions, *Booth v. Churner*, 532 U.S. 731 (2001), and *Porter v. Nussle*, provide substantial guidance in discerning the meaning of § 1997e(a) as it pertains to this question. In *Booth*, a prisoner sought injunctive relief and monetary compensation for alleged Eighth Amendment violations. 532 U.S. at 734. The issue addressed was whether the PLRA required Booth to exhaust the prison grievance process even though it promised no hope of the monetary relief he sought. Couched in terms of the statutory language, the question was "whether or not a remedial scheme is 'available' where the administrative process has authority to take *some* action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress." *Id*. at 736 (emphasis added).

**[3]** *Booth* concluded that prisoner plaintiffs must pursue a remedy through a prison grievance process as long as *some* action can be ordered in response to the complaint. The Court, construing the statutory language, considered that "[i]t makes no sense to demand that someone exhaust 'such administrative [redress]' as is available; one 'exhausts' processes, not forms of relief, and the statute provides that one must." *Id.* at 739 (alteration in original). In light of this mandate, the Court determined, prisoners are obligated to navigate all a prison's administrative review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Id.* at 739-41. By thus enacting "an obviously broader exhaustion requirement" than had existed previously, *Booth* held, Congress meant to eliminate "a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms." *Id.* at 741.

**[4]** At the same time, *Booth* made quite clear that the statutory language does not require exhaustion when *no* pertinent relief can be obtained through the internal process. As the Court noted, both parties in *Booth* so recognized: "Neither of them denies that some redress for a wrong is presupposedly the statute's requirement of an 'available' remedy'; neither argues that exhaustion is required where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Id.* at 736. The Court agreed with the parties' interpretation in this regard, recognizing that "the modifier 'available' requires the possibility of some relief for the action complained of." *Id.* at 738; *see also id.* at 736 n.4 ("Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust.")

As to the basic legal question before us, *Booth*'s statutory interpretation is dispositive: The obligation to exhaust "available" remedies persists as long as *some* remedy remains

"available." Once that is no longer the case, then there are no "remedies . . . available," and the prisoner need not further pursue the grievance.

**[5]** The other circuits that have considered whether a prisoner continues to have an exhaustion obligation once it is clear that no further relief is available have agreed with our understanding that *Booth* decides this question in the negative. The Tenth Circuit has held that "[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004). Similarly, the Second Circuit determined in *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004), that further attempts at exhaustion are unnecessary when there is "no further 'possibility of some relief.' " *Id.* at 669 (quoting *Booth*, 532 U.S. at 738). *See also Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002) (asserting that once it is shown that there is no "possibility of relief," then "administrative remedies are not really available," and exhaustion is no longer required).

**[6]** We conclude, as have these other circuits, that a prisoner need not press on to exhaust further levels of review once he has either received all "available" remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available.[10]

Although *Booth*'s textual analysis provides the basic legal principle that governs the issue before us, some inquiry into the purpose of the PRLA exhaustion requirement will aid our

---

[10]That it may be advisable for an inmate to appeal every issue to the highest level to avoid any question as to whether the administrative process has been adequately exhausted does not alter our conclusion. While "over-exhaustion" may be wise so as to expedite later litigation, the fact remains that *Booth* does not *require* an inmate to continue to appeal a grievance once relief is no longer "available."

later application of the no-relief limitation on that require-ment. *Porter* summarized that purpose, expansively, as "af-ford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a fed-eral case." 534 U.S. at 525. By providing this opportunity, Congress expected, frivolous cases might not be pursued, "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation," and "for cases ulti-mately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the con-troversy." *Id.*

None of these purposes are served by a requirement that a prisoner continue to pursue administrative review after all "available" relief has been accorded. At the same time, the purposes can be served by relief accorded outside the usual grievance process, so that awaiting the results of investiga-tions triggered by the grievance process but outside of it can serve the purposes of the exhaustion requirement.

Once there is no further possibility that "corrective action [will be] taken in response to an inmate's grievance," *id.*, there is no hope that the inmate might be satisfied by relief other than that requested. As long as some such possibility persists, however, the inmate might be satisfied, even if he cannot participate further in the investigation that could yield that result.

In addition, no further administrative record is likely to be developed once the system has provided whatever relief it can; prison administrators are unlikely to waste resources on investigations leading nowhere. *See Booth*, 532 U.S. at 736 n.4 ("Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust.") As long as there is an ongoing investigation into

the facts underlying the grievance, however, the prison officials may develop information useful should litigation ensue.

Finally, requiring *entirely* pointless exhaustion, when no possible relief is available, is more likely to inflame than to "mollify passions," *Booth*, 532 U.S. at 737, and thus is unlikely to " 'filter out some frivolous claims.' " *Porter*, 534 U.S. at 525. Once an agency has granted some relief and explained that no other relief is available, "the administrative process has not been obstructed. It has been exhausted," *Jasch v. Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002). Insisting that a prisoner nonetheless continue to make appeals to administrators who will not read or consider them cannot provide the satisfaction that "very fact of being heard" *Booth*, 532 U.S. at 737, can sometimes provide.

With those considerations in mind, we turn to the application of these principles to the facts of these cases.

## II.

In deciding whether the PRLA exhaustion standard has been met in the cases before us, it is of central importance that § 1997e(a) is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) *cert. denied*, 540 U.S. 810 (2003). As we explained in *Wyatt*, "defendants have the burden of raising and proving the absence of exhaustion." *Id*. As we have concluded that there can be no "absence of exhaustion" unless *some* relief remains "available," a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. *See Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (holding that because failure to exhaust is an affirmative defense under the PLRA, a complaint cannot be dismissed where the prisoner submits evidence showing, and the defendants do not disprove, that no remedy was "available"). Relevant evidence in so demonstrating would include statutes,

regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case, such as in the response memoranda in these cases. With regard to the latter category of evidence, information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available." *See id.* at 113 (relying on directives given by prison officials to the inmate regarding the grievance procedure because " '[a]vailable' means 'capable of use; at hand,' and if prison officials inform the prisoner that he cannot file a grievance, the formal grievance proceeding . . . was never 'available' . . . within the meaning of 42 U.S.C. § 1997e"); *cf. Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (remanding to consider whether the regulations covering the grievance procedures were "sufficiently confusing so that a prisoner . . . might reasonably have believed that he could raise his claim against [the defendant] as part of his defense in disciplinary proceedings."); *Giano v. Goord*, 380 F.3d 670, 673-74 (2d Cir. 2004) (holding that an inmate's reasonable interpretation of prison regulations justified his failure to exhaust when he raised allegations of retaliatory staff misconduct as a defense in disciplinary proceedings brought against him, rather than affirmatively pursuing the independent grievance system).

With that background, we turn to the facts of each of the cases before us.

1.   *Brown*: Considering carefully the record before us, we conclude that the Department of Corrections did not establish that once it had ordered an investigation into Officer Valoff's alleged misconduct through the separate "staff complaint" process, it had any remaining "authority to act on the subject of the complaint," *Booth*, 532 U.S. at 736 n.4, through the grievance procedure.

The second level response memorandum characterized the "appeal issue" as "Staff Complaint" and stated that the "Appeal Decision" was "Partially Granted." Under "Summary of Investigation," the memorandum stated that a thorough investigation would be conducted through the Office of Internal Affairs; that the Administration would decide on the "appropriate action" to be taken if necessary: that Brown would not be apprised of any disciplinary action taken as a result of this complaint; and that monetary compensation is beyond the scope of the appeals process. Under "Appeal Decision," the memorandum stated: "Your appeal is partially granted at the second level of review, in that your appeal will be investigated by the Office of Internal Affairs, at which time you will be personally interviewed." The memorandum did not counsel that any further review was available.

[7] Even read in isolation, the reasonable import of this memoranda is that no further relief will be available through the appeals process, but the confidential staff complaint investigation would go forward and could result in some administrative action based on Brown's complaint. That Brown could reasonably have so understood the communications to him is itself a strong indication that no further relief was "available" other than the staff complaint investigation and (confidential) result. *See Brown*, 312 F.3d at 112.

[8] Further, the Department's governing directives confirm that this reasonable interpretation of the response memorandum reflects its actual procedures. The Administrative Bulletin of the Department of Corrections, issued on August 21, 1998, before Brown's second level response, states unequivocally that "**ALL** complaints which allege any misconduct by a staff member shall be logged by the appeals coordinator as a Staff Complaint." (bold in the original) *See also id.*, section 3 ("It is . . . important that appeals coordinators **do not log allegations of staff misconduct into other appeal categories**[ than "staff complaint."]) (bold in the original). The Bulletin then goes on to prescribe that if — as the second level

response stated with respect to Brown's grievance — a staff complaint "warrants a formal investigation," then the second level response "shall note that the appeal was granted or partially granted (*depending upon the action requested by the appellant*)." (Emphasis added.) Finally, after suggesting the use in the second level response of language quite similar to that used in the second level response to Brown, the Bulletin advised that "[w]hen an appeal *alleges* staff misconduct *and* other issues; e.g. dismissal of a Rules Violation Report or property loss . . . the inmate/parolee shall be notified . . . that the other issue(s) must be appealed separately." (Emphasis added.)

The Department's Operations Manual explains the staff complaint procedure referenced in the Bulletin in some detail: A staff investigation "is a systematic gathering of all facts and evidence concerning an allegation of misconduct. All allegations, facts, evidence, and findings shall be verified and documented." DOM § 31140.9. Only after such an investigation may an adverse personnel action be taken against a Department employee. *See id.* § 31140.15. An investigation results in a specific finding as to each allegation: "no finding," "not sustained," "unfounded," "exonerated," or "sustained." *Id.* § 31140.14. Critically, for present purposes, investigative records are "afforded the highest degree of confidentiality," *id.* § 31140.11, and "[t]he Hiring Authority [must] ensure the proper maintenance and security of investigation/inquiry records and files pursuant to [California Penal Code §§] 832.5 and 832.7." *Id.*, § 31140.16. As part of this confidentiality policy, "the complainant may only be advised that 'appropriate administrative action has been taken . . . [A]t no time should specifics relating to any personnel action be discussed with a complainant." *Id.,* §31140.4.2. As this summary indicates, this confidential investigation is intended to develop *all* the facts concerning staff misconduct, and to keep both the factual findings and the relief accorded confidential.

These directives, taken together, lead us to conclude that no further relief was in fact "available" through the appeals process, although the staff complaint process to which the grievance was directed instead had not yet run its course. The Operations Manual specifies an extensive investigation where the staff complaint process is triggered. The Bulletin explains that staff misconduct grievances are to be investigated *only* through the staff complaint process, thereby negating any possibility of a parallel investigation through the appeal process. Thus, once Brown's grievance was *categorized* as a "Staff Complaint" — which the entry in the "appeal issue" box indicates that it was — there was no possibility that it would be investigated again, separately, through the appeal process.[11]

Further, the Bulletin explains the meaning of the "Partially Granted" designation: Whether an appeal directed to the staff complaint procedure is given a "granted" or "partially granted" response depends not on whether there remains some possibility of obtaining relief through the appeals process, but on "the action requested by the appellant." Here, the "action requested by the appellant" was monetary compensation, which was, as the response informed him right after telling him that his staff complaint would be thoroughly investigated, "beyond the scope of the appeals process. . . ."

Finally, the Bulletin also specifies the language to be used if there is some separate matter that can still be pursued through the appeals process: In that event, "the inmate/parolee shall be notified that the staff complaint is being handled and that the other issue(s) must be appealed separately." Brown

---

[11]The partial dissent criticizes our conclusion on the basis that the consequence will be that allegations of staff misconduct will never be able to be pursued through the prison's administrative appeals process. *See* Concurring and dissenting op. at 12380. This result, however, is dictated by the Department's own Administrative Bulletin, which shunts off such grievances into the Staff Complaint process. The dissent's quarrel, then, is not with our holding, but instead with the system designed by the California Department of Corrections.

was given no such advice, indicating — correctly, as we read his appeals — that there was no issue other than staff misconduct, and therefore no matter "that must be appealed separately."

No other evidence in the record contradicts the conclusion that no further relief was "available" through the appeals process once the staff misconduct investigation was opened.[12] While Valoff argues that an appeal to the Director's level might have netted additional relief to Brown, he produced no evidence — which would have had to contradict his own directives — that it could have.

The evidence Valoff submitted consisted of a declaration from the Chief of the Inmate Appeals Branch confirming that Brown did not file an appeal relating to this case at the third level and an appeal Brown did file at the third level regarding an entirely separate incident, involving a different corrections officer.[13] This evidence does not demonstrate that the appeals process could have, or did, yield any relief under circumstances similar to those here.

In lieu of evidence, Valoff now proffers that, "[o]ne can easily *imagine* actions that [the Department] could have taken

---

[12]Valoff relies on *Larkin v. Galloway*, 266 F.3d 718 (7th Cir. 2001), to support his contrary position. In that case, however, the plaintiff did not contend that his complaint was "beyond the authorized jurisdiction" of the prison's administrative process, and the court held that there was "no question that some action could have been taken in response to the complaint." *Id*. at 723.

[13]The district court decided this case before we clarified our earlier opinion in *Wyatt v. Terhune*, 280 F.3d 1238 (9th Cir. 2002), by specifying that an affirmative defense for failure to exhaust can be raised through an unenumerated Rule 12(b) motion, and can therefore rely on evidence outside the record. *Wyatt v. Terhune*, 315 F.3d at 1119-20. Consequently, the district court was in error, although understandably so, in refusing to consider the evidence outside the record submitted by the defendant. We do consider that evidence, although we do not find that it illuminates the issue before us.

to provide relief to Brown. For example, the [Department] could have transferred Valoff to a different post, transferred Brown to a different cell or prison, or modified its policies and procedures concerning the use of pepper spray. At a minimum, CDC could have afforded Brown another opportunity to be heard." (Emphasis added.) Establishing, as an affirmative defense, the existence of further "available" administrative remedies requires evidence, not imagination.

Moreover, the evidence that is in the record is not consistent with Valoff's speculations. It is clear, for example, from the Department's general directives and from its responses in this case, that only *after* the staff misconduct investigation, through which Brown's allegations were considered, would the Department of Corrections have determined whether Valoff's transfer to another institution was appropriate. Those documents emphasize that *all* investigations into staff misconduct are to take place through the staff complaint process; that the choice of relief in the event a complaint is sustained is up to the Department; and that the results of the staff complaint process are confidential. For similar reasons, any transfer of Brown because of Valoff's behavior would depend on sustaining the complaints about that behavior and thus could not come through the appeals process.

Valoff also posits a change in the pepper spray policy as a possible remedy following an appeal to the Director's level. Brown did not, however, complain about the pepper spray policy; rather, his complaint was that the policy had been violated.[14] As Brown's grievance in no way challenged the pepper spray policy, we can conceive no reason the Director would reconsider that policy in response to Valoff's grievance. *See Booth*, 532 U.S. at 736 n.4 ("Without the possibility of some relief, the administrative officers would presumably have no

---

[14]Brown's grievance stated in relevant part: "Correctional Officer J. Valoff, with his actions, violated policy and procedure, Use of Force, and Use of Tear Gas."

authority to act on the *subject* of the complaint, leaving the inmate with nothing to exhaust." (emphasis added)). For that same reason, the notion that "[a]t a minimum, CDC could have afforded Brown another opportunity to be heard," is not true, on the present record. An "opportunity to be heard" means that someone must be listening. Yet, all indications are that on a third level appeal, no one would be listening — because the investigation and consideration of the grievance had been directed, in their entirety, to the staff complaint process.

We note, finally, that Brown did give the process to which his complaint was directed a full opportunity to develop the facts and reach a conclusion. When he was not notified of the results of the staff complaint process, he made inquiry of the California Office of the Inspector General. In a letter dated before the federal court complaint was filed the Inspector General notified Brown that "an investigation was in fact conducted and completed." The Department, consequently, had a full opportunity to consider and investigate the complaint before this suit was filed, in accord with its own processes. As those processes did not involve any further appeals, Brown had no obligation to pursue the third level appeal before proceeding to court.

**[9]** We conclude that Brown did exhaust "such administrative remedies as are available." Section 1997e(a) therefore creates no barrier to Brown's pursuit of monetary relief. The decision of the district court must therefore be affirmed.

2. *Hall:* Hall's case differs from Brown's in two critical respects, both of which we deem to support a conclusion that he, unlike Brown, did not meet the PRLA exhaustion requirement.

*First*, while Hall, like Brown, was informed in his second level response memorandum that his "appeal is being answered as a staff complaint," Hall, unlike Brown, was also

informed that "[i]f the appeal contains other issues as well, i.e., disciplinary or property issues, the other issue(s) must be appealed separately. This advice is in accordance with Administrative Bulletin 98/10, issued August 21, 1998." Hall was also advised that "[i]f . . . dissatisfied with th[e] decision," "further review" was available. Finally, Hall's second level response was marked "Denied" rather than "Partially Granted."

These differences in the second level response reflect a difference in the nature of Hall's grievance, as compared to Brown's. Both Hall's grievance and his federal court complaint, unlike Brown's, raised issues other than those relating to the misconduct of the correctional officers who assertedly used excessive force. Hall also complained in his grievance that he did not receive adequate medical care after the excessive use of force and that he was "returned to an empty cell with no property." Similar allegations were repeated in Hall's complaint in this suit: "[P]laintiff[ ] . . . received no medical attention [although he] had complained . . . during medical deliveries that he was in severe pain . . . and need [*sic*] to be seen by a doctor . . . ;" "[P]rison officials had confiscated . . . Plaintiff's personal property."[15]

---

[15]The partial dissent argues that Brown's complaint is indistinguishable from Hall's because it also contained allegations of inadequate medical care. Concurring and dissenting op. at 12374-75 n.1. This argument is based on the following language from Brown's complaint:

> As a result of being sprayed in my left eye by Officer Valoff, I now have three little spots in my left eye, which I complained about to staff, Captain Sanchez, who heard my 114D lock up order the following day, Sgt. Flores, Ad, Seg Sgt., RN Bengi, and several MTA's and nurses that I can't identify by name, but, can recognize. I complained in my first ICC committee hearing, and no one responded with any interest. I submitted several sick call application, and met again with cancellations and excuses about not receiving my submitted medical applications. With such negative results, I kept this information to myself until I could find someone who would listen.

**[10]** It thus appears that in Hall's case, unlike in Brown's, there were matters separate from the staff complaint about excessive force — i.e., allegations regarding lack of medical care and deprivation of property — that, according to both the Administrative Bulletin referenced in the second level response and the response itself, "must be appealed separately." That is why, presumably, the response memorandum to Hall, unlike the response to Brown, did note the possibility of further appeal.[16] We conclude that both a reasonable interpretation of the responses made to Hall and the Department's

---

When read in context, it is evident that Brown's discussion of his treatment by medical staff was *not* raised as a separate complaint, but rather as a way of explaining the steps Brown took to complain about the mistreatment and, in support of his request for damages, the medical impact of the alleged attack. Hall, in contrast, stated in his complaint that "[i]t must be noted that, myself nor my cellie (Petillo) was given adequate medical care, we were merely questioned about our injuries, *but medical staff did not apply proper medical aid to me after brutal cell extraction also*. (emphasis in original). That Hall's intention in making this statement was to raise a separate claim of improper medical care, along with his allegations of excessive force and property loss, is reinforced by the fact that in his federal complaint, Hall reasserted his complaints about medical care and confiscation of personal property. In contrast, Brown's federal complaint does not assert issues surrounding his medical treatment.

Furthermore, contrary to our dissenting colleague's claim that Hall made no "specific allegation as to what property was taken," Concurring and dissenting op. at 12375 n.1, Hall's grievance form states that he was returned to a cell with "no sheets, no mattresses, no blankets. And no other article of clothing except boxer shorts."

[16]We do not rely on the fact that Hall's appeal was marked "denied." This notation may simply reflect the fact that "partially granted" seems to have been reserved for situations like Brown's, in which there was other relief requested for the same set of alleged facts but that relief is not available through the appeals grievance. Whether that is so or not, we agree with the district court that the notation used is not controlling. Here, Hall was granted the same relief — a full staff complaint investigation — that, in Brown's case, was denominated a partial grant. Characterizing Hall's appeal as "denied" was inaccurate or, at least, misleading, and not entitled to weight.

actual practices as reflected in the governing directives indicate that, as to certain aspects of Hall's grievance, some relief might have been available had he pursued his third level appeal.[17]

[11] *Second,* unlike Brown, Hall filed his federal court complaint in June 1999, before the staff complaint investigation was completed on November 2, 2000, and before he was notified on July 2, 2001 that "[t]he findings of said allegation(s) were *partially sustained*." Until the staff misconduct investigation was completed, the Department had not had a full opportunity to investigate the complaint and to develop an understanding of the facts underlying it. Moreover, even absent any specific information regarding the results of the investigation, it is conceivable that a prisoner who learns that his allegations were "partially sustained" would be satisfied that he had been heard and proceed no further.

We recognize that, as the facts of this case illustrate, awaiting the results of a staff misconduct investigation can substantially expand the time required to exhaust the Department's available administrative remedies. Unlike the grievance process, through which prompt responses are ordinarily required, *see* Cal. Code Regs., tit. 15, §§ 3084.5(I) & 3084.6(b), internal regulations mandate only that the Department complete an investigation within one year. *See* DOM § 31140.8.

---

[17]Our dissenting colleague relies on the fact that the pre-printed inmate appeal form used by both Brown and Hall contained a notation that a Director's level review existed. Concurring and dissenting op. at 12374. This argument misses the point. The "availability" of relief does not turn on what the prisoners might have been told at the time they filed their complaints, but rather on how the prison viewed and treated their complaint based on its own procedures. The Administrative Bulletin states that where the inmate raises both staff complaint and other issues, the prison is to inform the inmate that those issues "must be appealed separately." The fact that Hall was so advised supports our conclusion that officials viewed his complaint, unlike Brown's, as containing issues for which relief was still available. The informative factor, then, is the difference in *treatment* of the two complaints, not the pre-printed language found on the appeal form.

We have held that a prisoner may *not* proceed to federal court while exhausting administrative remedies, *see McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (per curiam). At the same time, awaiting the completion of a staff misconduct investigation could, absent some adjustment, endanger the prisoner's ability to file his court complaint within the limitations period. *See* Cal. Civ. Proc. Code § 335.1; *Maldonado v. Harris*, 370 F.3d 945, 954 55 (9th Cir. 2004), *cert. denied sub nom. Kempton v. Maldonado*, 125 S. Ct. 1725 (2005) (holding that there is a two year statute of limitations in California in §1983 cases). We do not regard the intersection of the exhaustion and statute of limitations requirements as creating a problem for prisoners, however, as we agree with the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process. *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001) ("We thus hold that in the ordinary case, a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process."); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (tolling is appropriate while prisoner completes mandatory exhaustion); *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (same).[18]

---

[18]We also note that, again like all the other circuits that have considered the question, "we refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). *See also Jernigan v. Stuchell*, 304 F.3d 1030 (10th Cir. 2002); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)*; Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) (per curiam). Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[F]ailure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable . . . ."); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (affirming district court decision not to dismiss for failure to exhaust when a Department of Corrections' failure to respond to a preliminary grievance precluded the plaintiff from pursuing a formal grievance). Here, however, there are no facts suggesting that Hall was prejudiced by the long time it took to conclude the investigation into his staff complaint.

**[12]** Hall did not await the completion of the staff misconduct investigation before filing his complaint in district court. For that reason, as well as because his grievance and federal court complaint both address issues separate from the excessive force staff complaint as to which a full investigation was conducted, the defendants of his case have met their burden of demonstrating that Hall did not exhaust "such administrative remedies as are available." The district court's decision is, therefore, reversed as to Hall.

## Conclusion

We AFFIRM in Brown's case and remand for further proceedings consistent with this opinion. We REVERSE in Hall's case.

---

REINHARDT, Circuit Judge, concurring in part, and dissenting in part:

Because neither Brown nor Hall exhausted all of the administrative relief that was available through the California Department of Corrections' grievance process and because *Booth v. Churner*, 532 U.S. 731 (2001), requires that in such circumstances their complaints be dismissed, I respectfully concur as to Hall and dissent as to Brown.

Notwithstanding the majority's attempt to distinguish Brown's case from Hall's, the factual and legal similarities between these two cases are overwhelming. Hall and Brown were inmates at the same prison at the time of the alleged assaults. In both cases, the plaintiffs were physically assaulted; they were pepper sprayed; and they suffered injuries for which both sought and allegedly failed to receive proper medical treatment. Both plaintiffs sought relief for their grievances through the Department of Corrections'

administrative appeals process; both sought compensation for their injuries and the alleged violations of their rights.

After their appeals were received by the appropriate officials, both inmates bypassed the informal and formal levels and both appeals were denied at the first level. At the second level, both were notified that their complaints of staff misconduct would be investigated, but that as inmates they would be informed only of the conclusion of the investigation. Although Brown's appeal was "partially granted" and Hall's appeal was "denied" at the second level, the majority agrees that the Hall label is erroneous. *See* Maj. op. at 12370 n.16. Hall's appeal should also have been labeled "partially granted." Although the majority opinion states that the second level Brown memorandum "did not counsel that any further review [was] available," Maj. op. at 12363, Brown, like Hall, was in fact notified *on his appeal form* that if he was dissatisfied with the second level response, he could appeal to the Director's Level for review. Given these similarities, I simply cannot see how the majority can dispose of these cases differently under *Booth*.[1]

---

[1]Both Brown and Hall's complaints resulted in the treatment of their grievances as "Staff Complaints." Both were referred for investigation of the officers' conduct. The majority suggests that Hall's grievance was different in that he also complained that he did not receive adequate medical care and that his property was taken. *See* Maj. op. at 12369. First, notwithstanding the separation under the administrative procedures of the staff complaint (which I will discuss later), both Brown and Hall were left with complaints that they had been deprived of their rights by virtue of the use of excessive force. The complaints were not fully remedied by the institution of personnel proceedings with respect to the offending guards. Other relief could have been afforded to the prisoners had they continued with the administrative appeals process. Second, as to the statement that "Hall also complained that he did not receive adequate medical care . . . and that his property was taken," that fact is of no consequence. Brown too complained about inadequate medical care. He alleged that he attempted to get medical appointments regarding the injury he suffered, but that each time they were cancelled and (false) excuses were made that his applications were not received. Surprisingly, the majority refuses to acknowledge

The issue in *Booth* was "whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." 532 U.S. at 733. The Court explained that, as with the two cases before us, "[t]he meaning of the phrase 'administrative remedies . . . available' [in 42 U.S.C. § 1997e(a)] is the crux of the case . . . The dispute . . . comes down to whether or not a remedial scheme is 'available' where . . . the administrative process has authority to take *some* action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress." *Id.* at 736 (emphasis added).

In *Booth*, the Court defined available relief broadly. "[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Id.* at 741 n.6. The Court specifically rejected any attempt to "read futility or other exceptions" into the requirement of exhaustion. *Id.* It held that as long as *some* relief is available through the administrative process, regardless of whether it is the relief a prisoner seeks, the prisoner must exhaust the process. The Court said that as long as the Department's grievance system "has authority to take some responsive action," relief is available. *Id.* at 736 n.4.

Although the Court did not specify precisely what constitutes available relief, it noted the argument that Congress must have accorded weight to the non-compensatory benefits of total exhaustion:

---

Brown's complaint about his medical treatment because it is not separately stated. *See* Maj. op. at 12369 n.15. We do not ordinarily read a prisoner's handwritten submission of his grievances to prison authorities with so fine and legalistic an eye. Brown clearly complained about his medical treatment. As to Hall's property loss, the form includes a brief general statement that when he returned to his cell it was empty, but no specific allegation as to what property was taken or that his property was retained by prison officials for an undue time.

> [R]equiring exhaustion in [ ] circumstances [where
> the prison's process cannot satisfy the inmate's sole
> demand] would produce administrative results that
> would satisfy at least some inmates who start out
> asking for nothing but money, since the very fact of
> being heard and prompting administrative change
> can mollify passions even when nothing ends up in
> the pocket. And one may suppose that the adminis-
> trative process itself would filter out some frivolous
> claims and foster better-prepared litigation once a
> dispute did move to the courtroom, even absent for-
> mal factfinding.

*Id*. at 737. Under this view, even when a prisoner requests
only relief that is *not* available through the administrative pro-
cess, the threshold for determining what constitutes available
relief is so low that "the very fact of being heard and prompt-
ing administrative change" may be sufficient in itself to
require exhaustion of the administrative process. *See id.*
Given that the mere existence of an additional hearing or pro-
cess may be sufficient to constitute an available administra-
tive remedy under *Booth*, any question as to whether there are
in fact other types of available relief is inconsequential. (*See
list of relief available for Brown, infra* Dissent at 12376-77).
All that the defendant need establish generally is that an addi-
tional hearing was available. The key to *Booth* is that the
Court held explicitly that for relief to be "available" in the
administrative process it need not be "effective"; nor need it
be desired by the prisoner. As long as *some* administrative
action can be ordered, the prisoner must exhaust the process.

I believe that *Booth* squarely controls the outcome of both
appeals here. Brown, like Booth, was an alleged victim of a
prison guard assault and was allegedly denied adequate medi-
cal treatment. Brown, like Booth, was clear in his request for
relief: "I respectfully request to be compensated for these
abuses, and blatant disregard for my constitutional rights."
Brown, like Booth, sought compensation for his physical inju-

ries. Moreover, Brown, like Hall, was informed that further relief was available at the time the second level decision was communicated to him. Brown, like Hall, was told that he had a right to appeal to the third level. However, Brown admits that he chose not to appeal to the third level because of the delay in the administrative appeals process. Although we may assume that Brown could not have requested any further personnel investigation with respect to Valoff's conduct and that he could not have sought greater discipline of Valoff, he unquestionably might have received *some* relief for himself at the Director's level had he done what he was advised to do — file an appeal with the Director. For example, Brown might have received the medical treatment that had been withheld, and/or a transfer to a different correctional facility away from his "persecutor," and/or a change in the prison's pepper spray policy, and/or the adoption of new disciplinary procedures or regulations governing prisoner's rights, and/or correction of his prison records and/or the restoration of good-time credits, and/or an apology from the Warden. There is no question that had Brown appealed he would have received an opportunity "to be heard and to prompt administrative change." *Booth*, 532 U.S. at 737. Each of the remedies mentioned constitutes available relief that Brown could have received at the third level of the administrative appeals process. In light of *Booth*, I believe that the majority opinion is simply incorrect in its statement that *no* further relief was available to Brown.

My colleagues suggest that there are circumstances in which a prisoner need not proceed through the whole administrative process because no relief would be available. I agree. There are two principal examples that I would offer, neither of which is applicable here. The first situation in which a prisoner may be excused from exhausting all steps in the process occurs when the prisoner's request is fully granted prior to the final level of the administrative process. *See Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004); *Dixon v. Page*,

291 F.3d 485, 490-91 (7th Cir. 2002). The majority relies on these cases for the conclusion that "[t]he other circuits that have considered whether a prisoner continues to have an exhaustion obligation once it is clear that no further relief is available have agreed with our understanding that *Booth* decides this question in the negative." Maj. op. at 12359. To the contrary, those cases hold only that an inmate need not continue to exhaust the administrative process once his administrative appeal has been *fully* granted. *See Abney*, 380 F.3d at 665 (Abney's request for orthopedic footwear was fully granted); *Ross*, 365 F.3d at 1187 (Ross' request for shower mats was fully granted); *Dixon*, 291 F.3d at 490-91 (Dixon's request for a transfer was fully granted). These cases are inapposite. At the second level, Brown's request was "partially granted" but, more important, was necessarily also partially denied. The denial pertained to the part of the request that sought a remedy for the violation of Brown's rights. No court has held after *Booth* that a prisoner whose appeal is denied or partially denied is excused from exhausting the administrative process if that process could offer him some additional relief. Here, there is no question that the administrative process could have afforded Brown and Hall further relief — even though that relief was *not* the relief they requested. The institution of an investigation of a guard is hardly all the available relief when a prisoner's constitutional rights have been violated. In fact, such a personnel proceeding is not a "remedy" at all. It does not provide relief to the prisoner. It is simply the state's internal administration of its own personnel policies for its own benefit.

The second circumstance in which relief would be unavailable occurs when the prisoner is explicitly told, or the regulations make it plain, that there is *no* further relief available to him. No such statement was made to Brown or Hall. Nor do the regulations so provide. Although Brown was told that monetary compensation was "beyond the scope of the appeals process" and that he would not be informed of any disciplinary action taken against Valoff, he was at no time told that the

administrative appeals process could offer him *no* further relief. In fact, there is no reason he could not have been afforded various forms of relief. *See supra* Dissent at p. 12377. The prison officials certainly had the authority to do so.[2]

Relying on Administrative Bulletin 98/10, the majority concludes that because Brown alleged staff misconduct, his grievance was categorized as a "Staff Complaint" and that the issue of staff misconduct is investigated separately and apart from the ordinary appeal process. I do not dispute this conclusion. The Administrative Bulletin does appear to create a *separate* and collateral administrative procedure for allegations of staff misconduct for the administration of its own personnel proceedings. *See* Admin. Bulletin 98/10 ("**ALL** complaints which allege any misconduct by a staff member shall be logged by the appeals coordinators as a Staff Complaint, Category 7.").[3] Nevertheless, I disagree with the majority's conclusion that "all indications are that on a third level appeal, no one would be listening — because the investigation and consideration of the grievance had been directed, in their entirety, to the staff complaint process." Maj. op. at 12368. At no time was Brown informed that the Department "was not

---

[2]An example of when an agency would not have the authority to offer a prisoner any relief and the prisoner could proceed directly to the district court would be if a prisoner's grievance pertained to an act that prison officials are required to perform pursuant to a statute and as to which no non-statutory relief was possible.

[3]Both Brown's and Hall's complaints were labeled by the prison authorities initially as Category 7A and, thus, as staff complaints. *See* Admin. Bulletin 98/10. Both were considered and denied at level one by the Division head. Both then appealed, and both appeals were then considered and decided by the Warden. Both responses at the second level stated that the appeals were being treated as staff complaints. Nothing in the prison regulations or procedures suggests that some appeals are deemed exhausted after the second level and that others must be processed through the third level (except for appeals from disciplinary actions taken *against* the prisoner. *See* Cal. Code Regs. tit. 15, § 3084.7(b). If Hall was required to appeal to the third level, as the majority and I agree, so was Brown.

going to listen" to his medical complaints or even to his allegations of physical mistreatment and violations of his constitutional rights. Requests for relief arising out of those complaints might have been denied at the third level, but the prison authorities would have been required to listen to the complaints and the appeals might well have resulted in *some* remedial response, even if one that did not satisfy Brown. Because Brown was informed that he could be afforded no further relief with respect to any request to have Valoff investigated or disciplined, the *Staff Complaint* portion of his grievance was granted; but his entire appeal was only "partially granted," as no administrative relief directly benefitting him or addressing the violations of his rights or the injuries he incurred was afforded.

The basic problem with the majority's approach is that its interpretation of Administrative Bulletin 98/10 would lead to the conclusion that the administrative appeals process is unavailable in California for all complaints of mistreatment of prisoners by prison staff. Yet, that is likely the principal reason for the existence of the administrative appeals process. The appeal form used by both Brown and Hall begins, "You may appeal any policy, *action* or decision which has a significant adverse affect upon you." (Emphasis added). This would clearly appear to include the deprivation of a prisoner's constitutional rights by prison officials. However, under the majority's view, when a prisoner's grievance identifies improper actions by prison guards or other officials, it must be treated as a "Staff Complaint" and removed from the normal appeals process. According to the majority's view of the process, when prisoners complain that their constitutional rights have been violated by the prison staff, they will simply be told that an investigation will be conducted and that they will later learn of its conclusion, although not of the specific actions taken, if any. Under that view, prisoners would have no opportunity within the ordinary administrative appeals process to have their complaints of mistreatment, including constitutional deprivations, considered and remedied.

My view is to the contrary. I believe that, under the California regulations, a personnel complaint is separated out and is treated as being of no direct consequence to the prisoner or, put differently, as affording no direct relief to the prisoner. Such a complaint is viewed as initiating an internal state process, part of the state's own personnel procedures. That is hardly the end of the matter, however. The prisoner's grievance concerning his abuse or mistreatment and the questions as to what relief, if any, should be afforded him as a result of the violation of his rights continue to proceed within the administrative appeals process, regardless of what happens on the separate track with the personnel complaint. Thus, the prisoner is, under my view of the process, afforded an opportunity to obtain a remedy for the constitutional violation he suffered. His use of the administrative process is not terminated simply because prison officials are investigating a personnel complaint. It is not simply a question of whether a prisoner must take the third appeal as Brown failed to do. The personnel complaint could as easily be filed directly, or segregated out, at the very first step of the process or even earlier. *See* Admin. Bulletin 98/10 at ¶ 4. In such case, under the majority's theory, the entire appeals process would be unavailable with respect to the entire complaint, not just with respect to the personnel proceedings; and the prisoner could proceed directly to the court in all cases.

The question the majority's decision poses is fundamental. Is the administrative appeals process limited to complaints by prisoners about general policies and other matters that do *not* involve the deprivation of prisoners fundamental rights by prison staff? I hardly think so. I think that a complaint regarding the deprivation of such rights is precisely the type of complaint the appeals process is designed to encompass.

Once the personnel aspect of Brown's complaint is removed to its separate track, the complaint is remarkably similar to Booth's. Both prisoners sought monetary relief; indeed, such was the only relief requested in each case.

Brown was told at step two that the "monetary compensation" he sought was "beyond the scope of the appeals process." The *Booth* Court expressly determined that the fact that monetary compensation is "beyond the scope of the appeals process" is inconsequential to the prisoner's obligation to continue to pursue his appeal. *See Booth*, 532 U.S. at 733, 736-38. The *Booth* Court clearly held that, when the administrative process can offer *any* relief, prisoners must continue to exhaust administrative procedures regardless of the relief requested, regardless of the relief offered, and regardless of the futility of exhaustion. *See Booth*, 532 U.S. at 741, 741 n.6. As I see it, *Booth* controls our resolution of these appeals. Although I find *Booth* extremely troubling and would have decided it differently, it is precedent and it is clearly applicable; and it is binding on us.

In sum, Brown was informed that he could appeal the second level decision to the director's level. Apart from the fact that California removes from the normal appellate process the portion of the case that pertains to disciplinary action against the prison staff (including any disciplinary investigation), Brown's case is identical to Booth's. Both were allegedly assaulted by prison guards. Brown's request for relief is no different than Booth's. Both limited their requests for relief to compensation. Both are required to exhaust the administrative process, even if that process is futile. *See Booth*, 532 U.S. at 741 n.6. So, too, is Hall. Because neither Brown nor Hall exhausted all of the administrative relief that was available through the Department of Corrections' administrative appeals process, *Booth* requires that both of their complaints be dismissed. I therefore respectfully concur as to Hall and dissent as to Brown.