**Tracy L. COLLIER, Plaintiff,**

v.

**L. BROWN, et al., Defendants.**

**No. ED CV 06–174–CBM(E).**

United States District Court,
C.D. California,
Eastern Division.

July 20, 2009.

Tracy L. Collier, Blythe, CA, pro se.

Adam Logan Marcotte, Mina K. Choi, CAAG–Office of Attorney General, Los Angeles, CA, for Defendants.

## ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

CONSUELO BLAND MARSHALL, District Judge.

Pursuant to 28 U.S.C. section 636, the Court has reviewed the pleadings, all of the records herein, the Report and Recommendation of United States Magistrate Judge, and Defendant Cortez' Objections to the Report and Recommendation. The Court approves and adopts the Magistrate Judge's Report and Recommendation. In particular, the Court rejects Defendant Cortez' contention, in his Objections to the Report and Recommendation, that the Magistrate Judge improperly relied on an assertedly unauthenticated exhibit. *See* Plaintiff's Opposition, section 2, pp. 4, 10. The Court also rejects, *inter alia*, Defendant Cortez' contention that Plaintiff improperly failed to comply with Local Rule 56–3. *See* Order re Discovery Cut–Off Date and Date for Filing Motions for Summary Judgment, filed December 3, 2007.

IT IS ORDERED that: (1) the Report and Recommendation of the Magistrate Judge is approved and adopted; (2) Defendants' Motion for Summary Judgment is granted in part and denied in part; (3) the following facts are specified as being not genuinely at issue: (a) Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Brown, Gibbons and LaCuesta, and with respect to Plaintiff's claim that Defendant Cortez retaliated against Plaintiff on December 22, 2005; (b) Defendants Terry and Mathews did not retaliate against Plaintiff as alleged in the Third Amended Complaint; (c) Defendant Cortez did not retaliate against Plaintiff as alleged in the Third Amended Complaint with respect to any of Cortez' actions except, possibly, with respect to Cortez' approval of the August 25, 2005 administrative segregation order; (4) summary judgment in favor of Defendants Brown, Gibbons, Terry and Mathews is granted; (5) the action is dismissed without prejudice as against Defendants Brown, Gibbons and LaCuesta; (6) the action is dismissed with prejudice as against Defendants Terry and Mathews; and (7) summary adjudication in favor of Defendant Cortez on all of · Plaintiff's claims against Cortez is granted except Plaintiff's claim that Cortez allegedly retaliated against Plaintiff by approving the August 25, 2005 administrative segregation order.

IT IS FURTHER ORDERED that the Clerk serve forthwith a copy of this Order and the Judgment of this date on Plaintiff and counsel for Defendants.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CHARLES F. EICK, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Consuelo B. Marshall, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05–07 of the United States District Court for the Central District of California.

## PROCEEDINGS

Plaintiff, a state prisoner proceeding *pro se,* filed this civil rights action for damages on February 21, 2006, alleging that prison officials at the Chuckawalla Valley State Prison ("CVSP") violated Plaintiff's constitutional rights. The Third Amended Complaint, the operative pleading, names as Defendants: Correctional Officers L. Brown, B. Terry and J. LaCuesta, Sergeant K. Gibbons, Captain B. Mathews,[1] and Deputy Warden J. Cortez, all sued in their individual capacities only. On August 1, 2008, Plaintiff filed two motions for summary judgment.

On November 10, 2008, Defendants filed a "Motion for Summary Judgment, or Alternatively, for Summary Adjudication" ("Defendants' Motion"). Defendants' Motion asserts, *inter alia,* that Plaintiff failed to exhaust available administrative remedies with respect to his claims against Defendants Gibbons, LaCuesta, Mathews, Terry and Cortez, as required by the Prison Litigation Reform Act of 1995 (Pub.L. No. 104–134, 110 Stat. 1321), 42 U.S.C. § 1997e(a) ("PLRA").[2] Specifically, Defendants alleged that Plaintiff failed to pursue his administrative appeals to the third, *i.e.,* the highest, level of review.

On November 12, 2008, the Court issued a Minute Order advising Plaintiff of the requirements of Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland,* 154 F.3d 952 (9th Cir.1998) (en banc), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2392, 144 L.Ed.2d 793 (1999); *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir. 1988).

On December 1, 2008, Plaintiff filed "Plaintiff['s] Motion for Opposition to De-

fentdant [sic] Brown Gibbon Lacuasta [sic]" ("Opposition"). In his Opposition, Plaintiff submitted copies of two appeals which bear a stamp appearing to indicate receipt by the Inmate Appeals Branch of the California Department of Corrections and Rehabilitation (the third and highest level of review). On January 30, 2009, the Magistrate Judge issued a Minute Order ordering Defendants to file a Reply addressing these matters.

On February 6, 2009, 2009 WL 304623, the Court issued a Memorandum and Order denying both of Plaintiff's motions for summary judgment.

On February 20, 2009, Defendants filed: (1) "Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment, etc." ("Reply"); and (2) "Defendants' Evidentiary Objections to Portions of Plaintiff's Declaration and Exhibits in Opposition to Defendants' Motion for Summary Judgment, etc." On February 23, 2009, the Magistrate Judge issued a Minute Order observing that the Reply and the supporting "Declaration of N. Grannis, etc." filed therewith contained contentions not set forth in Defendants' Motion for Summary Judgment. The Minute Order granted Plaintiff leave to file a Response to the Reply which could include any evidence Plaintiff wished to submit in opposition to the evidence upon which Defendants relied in the Reply.

On March 2, 2009, Plaintiff filed "Plaintiff['s] Objections to Defendants' Opposition [to] Motion for Summary Judgment" ("Plaintiff's Objections").

---

**1.** Defendants varyingly refer to Defendant Mathews as "Mathews" and "Matthews." The Court employs the spelling indicated on prison documents submitted by Defendants (*see, e.g.,* Declaration of Custodian of Records L. Crone in Support of Defendants' *Motion* for Summary Judgment, or Alternatively, for Summary Adjudication, Exs. E, G, J, K).

**2.** Defendants do not assert that Plaintiff failed to exhaust his claims against Defendant Brown.

## SUMMARY OF ALLEGATIONS OF THIRD AMENDED COMPLAINT

In the Third Amended Complaint, Plaintiff alleges the following:

On June 5, 2005, Plaintiff allegedly was confined in administrative segregation "for a violation of 314", assertedly in retaliation for filing staff complaints (Third Amended Complaint ["TAC"], p. 11).[3] On July 18, 2005, Defendant Gibbons allegedly assaulted Plaintiff at the instigation of Defendant Brown, and Defendant LaCuesta assertedly failed to protect Plaintiff from the assault (TAC, pp. 7, 11). On July 28, 2005, the Warden allegedly released Plaintiff back to the general prison population at CVSP (TAC, p. 11).

On August 18, 2005, Plaintiff allegedly was transferred to Ironwood State Prison and confined in the "hole," assertedly in retaliation for filing a staff complaint (id.). Defendant Terry thereafter allegedly produced an assertedly unlawful and retaliatory lock-up order to confine Plaintiff in administrative segregation (id.).

On November 22, 2005, Defendant Mathews allegedly confined Plaintiff in administrative segregation, and Defendant Terry allegedly told Plaintiff that Plaintiff could receive an indefinite SHU (Security Housing Unit) term depending on the outcome of Plaintiff's court case (TAC, p. 12). On December 16, 2005, Defendant Cortez allegedly released Plaintiff from administrative segregation (id.). However, on December 22, 2005, Defendants Terry and Mathews allegedly caused Plaintiff to be returned to administrative segregation in the absence of a lock-up order (id.). Plaintiff allegedly was not thereafter released from administrative segregation until June 2, 2006 (TAC, p. 10).

Among the exhibits attached to the Third Amended Complaint is an inmate grievance, bearing a submission date of December 14, 2004, in which Plaintiff alleged that various female staff members, including Defendant Brown, had conspired to harass Plaintiff and accuse him falsely of sexual misconduct (TAC, Exhibits, pp. 18–19). Plaintiff also attaches an "Administrative Segregation Unit Placement Notice," dated August 18, 2005, indicating Plaintiff was placed in administrative segregation "to preserve the integrity of an investigation involving [Plaintiff's] allegations of misconduct by CVSP's Administrative Segregation Staff following your Administrative Segregation placement of 06/06/05" (TAC, Exhibits, p. 21). The Notice indicated Plaintiff would be retained in the Administrative Segregation Unit at Ironwood State Prison pending the conclusion of the investigation and review by CVSP's Institutional Classification Committee (id.). Defendant Mathews signed the document as Administrative Reviewer (id.). Another exhibit indicates that, on August 25, 2005, Defendant Cortez chaired a classification hearing reviewing the August 18, 2005 segregation placement (TAC, Exhibits, p. 22). The classification committee decided to retain Plaintiff in administrative segregation pending the investigation (id.).

A Classification Committee document dated December 16, 2005 indicates that, on August 23, 2005, the Riverside County District Attorney's Office accepted the case against Plaintiff for prosecution (TAC, p. 24). The Classification Committee, chaired by Defendant Cortez, decided to release Plaintiff from administrative segregation (id.).

---

**3.** The reference to "314" is an apparent reference to California's indecent exposure statute, California Penal Code section 314.

Another document shows that, on December 22, 2005, a Classification Committee, whose members included Chairperson Cortez and Defendants Mathews and Terry, amended the December 16, 2005 order, and directed that Plaintiff be retained in administrative segregation (TAC, p. 25). The Committee noted that Plaintiff's Central File revealed that Plaintiff had three prior Rules Violation Reports for indecent exposure, sexual misconduct and masturbation, that the Riverside County District Attorney's Office had accepted the indecent exposure case for prosecution, and that a jury trial in that case was set for January 11, 2006 (*id.*). The Committee indicated that Plaintiff's sexual misconduct violations met the criteria for referral to the Departmental Review Board ("DRB") for consideration of an indeterminate SHU term (*id.*). Therefore, the Committee amended its action of December 16, 2005, and ordered Plaintiff confined in administrative segregation pending a final decision of the DRB referral (*id.*).

In the *Third Amended Complaint*, Plaintiff alleges four claims for relief:

**Claim One (Retaliation against Defendant Brown; Excessive Force against Defendants Gibbons and LaCuesta)**

In Claim One, Plaintiff alleges that, on July 18, 2005, Defendant Brown assertedly incited Defendant Gibbons to assault Plaintiff (TAC, p. 7). Defendant LaCuesta allegedly watched the assault without attempting to protect Plaintiff (TAC, p. 7). Defendant Brown allegedly acted in retaliation for two staff complaints Plaintiff assertedly had filed against Brown (*id.*).

**Claim Two (Retaliation against Defendant Cortez)**

In Claim Two, Plaintiff alleges that Defendant Cortez unlawfully caused Plaintiff to be confined in administrative segregation for ten months, assertedly in retaliation for Plaintiff's filing of the grievance concerning the alleged July 18, 2005 assault (TAC, p. 8). Plaintiff alleges that, on August 18, 2005, Plaintiff was removed from the general prison population for complaining to the Warden concerning the alleged assault (*id.*). Defendant Cortez allegedly requested that Plaintiff receive a 90–day "hole" placement (*id.*). Plaintiff allegedly was ordered to be transferred to the Ironwood State Prison "hole," assertedly pending an investigation of the alleged assault (*id.*). From August 18, 2005 to December 22, 2005, Plaintiff allegedly was never interviewed or given any paperwork concerning any investigation (*id.*).

On December 22, 2005, Defendant Cortez allegedly confined Plaintiff in administrative segregation, assertedly pending the outcome of a court proceeding "that was at *closure* on an institutional level 7–28–05" (*id.*) (original emphasis). Cortez allegedly confined Plaintiff in administrative segregation pending a "DRB review for SHU placement Plaintiff was never qualif[ied] for" (*id.*).

**Claim Three (Retaliation against Defendant Terry)**

In Claim Three, Plaintiff alleges that, on November 22, 2005, Defendant Terry issued an allegedly illegal lock-up order in asserted retaliation for Plaintiff's staff complaints (TAC, p. 9). The order allegedly confined Plaintiff in administrative segregation pending a "DRB" referral for a possible indeterminate "SHU" placement for which Plaintiff allegedly did not qualify, and pending a court proceeding which assertedly was "closed on an institution level" (*id.*).[4]

---

4. Claim Three also contains equal protection allegations (*see* TAC, p. 9). However, the Court previously dismissed Plaintiff's equal protection claim. *See* Memorandum and Order filed November 6, 2007.

*Claim Four* (**Retaliation against Defendant Mathews**)

In Claim Four, Plaintiff alleges that, on November 22, 2005, Defendant Mathews unlawfully confined Plaintiff in administrative segregation, assertedly in retaliation for Plaintiff's assault complaint (TAC, p. 10). Defendant Mathews, along with Defendant Terry, allegedly presented their assertedly illegal lock-up order to Defendant Cortez at a classification hearing on December 16, 2005(*id.*). Cortez allegedly rejected the lock-up order (*id.*). Nevertheless, Defendants Mathews and Terry then allegedly confined Plaintiff in administrative segregation for 90 days (*id.*).

## DEFENDANTS' CONTENTIONS

Defendants contend:

1. Plaintiff allegedly failed to exhaust his administrative remedies with respect to his claims against Defendants Gibbons, LaCuesta, Cortez, Mathews and Terry;

2. Plaintiff's retaliation claims allegedly fail as a matter of law;

3. There allegedly is no evidence that Defendant Gibbons used excessive force on Plaintiff;

4. There allegedly is no evidence that Defendant LaCuesta was deliberately indifferent to Plaintiff's safety;

5. The Eleventh Amendment allegedly immunizes Defendants Mathews, Cortez and Terry from suit to the extent Plaintiff sues these Defendants in their official capacities;[5]

6. Defendants allegedly are entitled to qualified immunity.

## STANDARDS GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate if the evidence, viewed in the light most favor-

able to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of offering proof of the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*"Celotex"*). Once the moving party's burden is met, the party opposing the motion is required to go beyond the pleadings and, by the party's own affidavits or by other evidence, "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *Miller v. Glenn Miller Productions, Inc.,* 454 F.3d 975, 987 (9th Cir.2006). The party opposing the motion must submit evidence sufficient to establish the elements that are essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

The Court must "view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party." *Scheuring v. Traylor Bros., Inc.,* 476 F.3d 781, 784 (9th Cir. 2007). Where different ultimate inferences reasonably can be drawn, summary judgment is inappropriate. *Miller v. Glenn Miller Productions, Inc.,* 454 F.3d at 988.

A factual dispute is "genuine" only if there is a sufficient evidentiary basis upon which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the lawsuit under governing law. *Id.*

---

**5.** As indicated above, the Third Amended Complaint names the Defendants in their individual capacities.

## DISCUSSION

**I.** *Plaintiff Failed to Exhaust His Administrative Remedies with Respect to His Claims Against Defendants Brown, Gibbons and LaCuesta; However, Genuine Issues of Fact Exist Concerning Whether Plaintiff Exhausted His Retaliation Claims Against Defendants Cortez, Terry and Mathews.*

### A. *Governing Legal Standards*

■ Under the PLRA, a prisoner must exhaust available administrative remedies before bringing an action in federal court challenging prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1199–1200 (9th Cir.2002). "Proper exhaustion" is required, which means that the inmate must use "all steps that the agency holds out." *Woodford v. Ngo*, 548 U.S. 81, 90, 93–94, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

The California Department of Corrections and Rehabilitation provides for a multi-step grievance process. *Woodford v. Ngo*, 548 U.S. at 85–86, 126 S.Ct. 2378 (2006); *Brown v. Valoff*, 422 F.3d 926, 929–30 (9th Cir.2005); *see* Cal.Code Regs., tit. 15, § 3084.5 (describing levels of review). To satisfy the exhaustion requirement, a prisoner ordinarily must exhaust his administrative appeals to the highest available level of review, which is generally the third or "Director's level" of review. *See Barry v. Ratelle*, 985 F.Supp. 1235, 1237–38 (S.D.Cal.1997); *see Brown v. Valoff*, 422 F.3d at 934, 937–38 (under *Booth v. Churner, supra*, "prisoner plaintiffs must pursue a remedy through a prison grievance process so long as *some* action can be ordered in response to the complaint"; original emphasis; holding prisoner sufficiently exhausted where no further relief was available in the appeals process).

To bring a third level appeal, an inmate whose second level appeal is denied or who is otherwise dissatisfied with the result "must explain the basis for his or her dissatisfaction on part H of the [appeal form] and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days." *Woodford v. Ngo*, 548 U.S. at 86, 126 S.Ct. 2378 (citation omitted); *see* Cal. Code Regs., tit. 15, § 3084.6(c) (inmate "must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision"). "An inmate's appeal may be rejected where '[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints.'" *Woodford v. Ngo*, 548 U.S. at 86, 126 S.Ct. 2378 (quoting Cal.Code Regs., tit. 15, § 3084.3(c)(6)); *see Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir.2009) (California regulations create an exception to the timely filing requirement where prisoner lacked the opportunity to file timely appeal). "[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Ngo v. Woodford*, 539 F.3d 1108, 1109 (9th Cir.2008) (citation and internal quotations omitted).

Exhaustion is an affirmative defense as to which a defendant bears the burden of proof. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 919–20, 166 L.Ed.2d 798 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.), *cert. denied*, 540 U.S. 810, 124 S.Ct. 50, 157 L.Ed.2d 23 (2003). Therefore, to obtain summary judgment on the ground of failure to exhaust, Defendants "must affirmatively demonstrate that no reasonable trier of fact could find other than for [Defendants]." *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

2007); *see also Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir.2008) (where the moving party bears burden of proof, to obtain summary judgment the moving party must show that "'the evidence is so powerful that no reasonable jury would be free to disbelieve it'") (citations omitted).

### B. *Discussion*

Defendants contend that Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Gibbons, LaCuesta, Mathews, Terry and Cortez because Plaintiff assertedly did not "pursue" the grievances concerning his claims against those Defendants to the third, final level of review (Defendants' Memorandum of Points and Authorities, pp. 10–11). In support of this assertion, Defendants have submitted the declarations of M. Bunts, CVSP Appeals Coordinator, and N. Grannis, Chief of the Inmate Appeals Branch of the California Department of Corrections, concerning Plaintiff's administrative appeals. These declarations and attached exhibits show the following:

Both the CVSP Appeals Coordinator's office and the Inmate Appeals Branch assertedly conducted a search of any and all appeals filed by Plaintiff alleging that: (1) on July 18, 2005, Defendant Brown assertedly conspired with Defendants Gibbons and LaCuesta to retaliate against Plaintiff for filing staff complaints by having Defendants Gibbons and LaCuesta assault Plaintiff; (2) on July 18, 2005, Defendant Gibbons assertedly conspired with Defendants Brown and LaCuesta to assault Plaintiff in retaliation for filing staff complaints; (3) on July 18, 2005, Defendant LaCuesta assertedly conspired with Defendants Brown and Gibbons to retaliate against Plaintiff for filing staff complaints by failing to intervene and prevent the assault by De-fendant Gibbons; and (4) Defendants Terry, Cortez and Mathews allegedly conspired and retaliated against Plaintiff by placing him in punitive administrative segregation for ten months ("Declaration of M. Bunts, Appeals Coordinator at Chuckawalla State Prison, in Support of Defendants' Motion for Summary Judgment, etc." ["Bunts Dec."], ¶ 9; "Declaration of N. Grannis, Chief, Inmate Appeals Branch, in Support of Defendants' Motion for Summary Judgment, etc." ["Grannis Dec."], ¶ 8). The searches assertedly showed the following appeal history:

1. Appeal Log No. CVSP–04–1116, submitted on November 10, 2004 and received on November 22, 2004, alleged that, in October 2004, Defendant Brown used profane and abusive language toward Plaintiff and issued an allegedly false Rules Violation Report.[6] The appeal was partially granted at the first and second levels of review, in that investigations were conducted, but Plaintiff's allegations of misconduct were found "not sustained" at both the first and second level. The appeal was denied at the third level of review (Bunts Dec., ¶ 10(a); Ex. A; Grannis Dec., ¶ 9(b)).

2. Appeal Log No. CVSP–04–1131, submitted on November 11, 2004 and received on November 24, 2004, challenged Plaintiff's disciplinary conviction for indecent exposure. The appeal did not contain any allegations of misconduct by Defendants Gibbons, LaCuesta, Mathews, Terry or Cortez. The appeal was bypassed to the second level of review and denied at that level. The appeal was also denied at the third level of review (Bunts Dec., ¶ 10(b); Ex. B; Grannis Dec., ¶ 9(a)).

3. Appeal Log No. CVSP–05–0741 (ISP–I–05–01580), submitted on August 3,

---

6. The copy of this appeal attached to the Bunts declaration is nearly illegible. Howev-er, a clearer copy is attached to the original Complaint.

2005 and received on August 19, 2005, alleged that Defendants Brown, Gibbons and LaCuesta assaulted Plaintiff on July 19, 2005[sic].[7] The appeal was partially granted at the first and second levels of review in that an investigation was conducted. Bunts states that Plaintiff "did not pursue the matter to the Third Level of Review" (Bunts Dec., ¶ 10(c); Ex. B).

4. Appeal Log CVSP–06–0004 (ISP–I–05–01564), submitted on November 23, 2005 and received on December 6, 2005, alleged that "CVSP administration" had confined Plaintiff to administrative segregation pursuant to "lock-up orders" assertedly issued on August 18, 2005 and November 22, 2005, allegedly as acts of retaliation and in violation of due process. The appeal was partially granted at the second level of review. The appeal form states that the second level review was returned to Plaintiff on March 3, 2006. Bunts states that Plaintiff "did not pursue the matter to the Third Level of Review" (Bunts Dec., ¶ 10(d); Ex. D).

5. Appeal Log No. CVSP–06–00068 (ISP–I–05–01670), alleged that Defendant Mathews violated Plaintiff's rights by placing Plaintiff in administrative segregation on December 22, 2005. The appeal was partially granted at the first level in that an investigation was conducted. Bunts states that Plaintiff did not pursue the matter to the second level (Bunts Dec., ¶ 10(e); Ex. E).

According to Grannis, other than the appeals in Log Nos. 04–1116 and 04–1131, "[n]o other third level appeals have been accepted and exhausted by the Inmate Appeals Branch" regarding Plaintiff's allegations concerning the alleged July 18, 2005

incident or the alleged retaliation (Grannis Dec., ¶ 10).

Plaintiff has not disputed Defendants' evidence concerning these appeals. Defendants do not dispute that Plaintiff exhausted the claims contained in Appeal Log No. CVSP–04–1116 and Appeal Log No. CVSP–04–1131. However, those appeals did not contain the claims alleged in the present action against Defendants Gibbons, LaCuesta, Cortez, Terry and Mathews.

### 1. *Exhaustion re Retaliation Claims*

Plaintiff does not claim that he submitted a third level appeal in Appeal Log No. CVSP–06–00068 (ISP–I–05–01670). Plaintiff contends that prison officials, including Bunts, attempted to interfere with Plaintiff's appeal rights by assertedly violating the time constraints for the processing and return of appeals which are set forth in state regulations (*see* Opposition, section 2, pp. 3–5).[8] "Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." *Brown v. Valoff*, 422 F.3d at 943 n. 18 (citations omitted). However, Plaintiff does not show that prison officials' alleged violation of state law time constraints actually hindered Plaintiff from submitting any appeals to the third level of review, or that Plaintiff otherwise lacked the opportunity to submit any of his appeals to the third level following receipt of a second level decision. *See id.* (rejecting delay argument where there were no facts showing plaintiff was prejudiced by any delay in investigating his complaint). The undisputed evidence shows that Appeal Log No.

---

7. As indicated hereafter, on August 18, 2005, Plaintiff was transferred to Ironwood State Prison. Plaintiff's appeals following the transfer bear log numbers for both Chuckawalla State Prison ("CVSP") and Ironwood State Prison ("ISP").

8. Plaintiff's Opposition consists of two independently paged sections containing argument, each of which is followed by exhibits. The Court refers to the Opposition by section number and the page number or numbers and exhibits pertaining to each section.

CVSP–06–00068 (ISP–I–05–01670) failed to exhaust Plaintiff's claim that Defendant Mathews retaliated against Plaintiff by approving the December 22, 2005 segregation order.

In his Opposition, Plaintiff submitted a copy of the "Inmate/ Parolee Appeal Form" in Appeal Log No. CVSP–06–0004 (ISP–I–05–01564) which is not identical to Defendants' version (Opposition, section 2, Ex. K).[9] Plaintiff's version of the document bears a stamp indicating that it was "received" by the Inmate Appeals Office on April 26, 2006. Defendants' version of this document does not bear this stamp (*see* Bunts Dec., Ex. D). Furthermore, and unlike Defendants' version of this document, Plaintiff's version of the document also contains a handwritten statement by Plaintiff in part "H" of the appeal form, indicating an intent to appeal to the third level of review and bearing a submission date of March 18, 2006. In the section of Plaintiff's document entitled "DIRECTOR'S ACTION," there is a check in the box marked "Granted," but no date or indication of any reason for the alleged grant. In Defendants' version of this document, part "H" is blank, the section entitled "DIRECTOR'S ACTION" is blank, and there is no check in the box in the section marked "Granted" (*see* Bunts Dec., Ex. D, p. 44).

In their Reply, Defendants no longer assert that Plaintiff failed to "pursue" a third level appeal in this matter. Rather, Defendants now assert that the appeal was "screened out" at the third level because Plaintiff did not submit the appeal to the third level within 15 working days of receipt of the second level response. Defendants attach to the Reply a second Decla-

ration of N. Grannis ("Grannis Dec. II"). Grannis indicates that the Inmate Appeals Branch's practice is to date stamp all incoming appeals, and thereafter to have "screeners" determine whether each such appeal meets the procedural and time requirements contained in state regulations (Grannis Dec. II, ¶ 12). According to Grannis, the "Inmate Appeals Tracking Sheet" for Appeal Log. No. CVSP–06–0004 (ISP–I–05–01564) shows that this appeal was received by the Inmate Appeals Branch on April 26, 2006 and screened out that day as untimely (*id.,* ¶ 9). Defendants apparently contend this appeal was untimely because the Inmate Appeals Branch reportedly did not receive it until April 26, 2006, more than 15 working days after Plaintiff assertedly received the second level response on March 3, 2006. However, the appeal need not be *received* at the third level within 15 working days; it need only be "submitted" by the inmate within that time period. *See Woodford v. Ngo,* 548 U.S. at 86, 126 S.Ct. 2378 (to exhaust at the third level, inmate "must explain the basis for his or her dissatisfaction on part H of the [appeal form] and *mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days* ") (citation omitted; emphasis added); Cal.Code Regs., tit. 15, § 3084.6(c).[10] As previously noted, Plaintiff's version of Appeal Log No. CVSP–06–0004 (ISP–I–05–01564) indicates that Plaintiff received the second level appeal on March 3, 2006, and that Plaintiff completed part "H" with a submission date of March 18, 2006. While the record does not indicate when Plaintiff actually mailed the appeal, one reasonably could infer from this document that Plaintiff did so

---

9. The Court overrules Defendants' evidentiary objections to this exhibit.

10. Part "H" of the appeal form states: "If dissatisfied, add data or reasons for request-

ing a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response." Part "H" also provides the address for submission of an appeal to the Director's Level.

within 15 working days of March 3, 2006, i.e., on or before April 7, 2006. Therefore, a genuine issue of fact exists regarding whether Appeal Log No. CVSP–06–0004 (ISP–I–05–01564) was submitted timely. Accordingly, Defendants are not entitled to summary judgment on their affirmative defense that Plaintiff failed to exhaust administrative remedies regarding Plaintiff's claims that the segregation orders of August 28, 2005 and November 22, 2005 were retaliatory.

However, Appeal Log No. CVSP–06–0004 (ISP–I–05–01564), which Plaintiff submitted on November 23, 2005, did not allege retaliation by any person after November 22, 2005, and hence cannot serve to show exhaustion of Plaintiff's claims concerning the December 22, 2005 segregation order.

Plaintiff alleges that he filed other appeals not reflected in Defendants' evidence (*see* Opposition, section 2, p. 4; Exs. M, N, O). Two of these appeals are potentially germane to Plaintiff's claims. In Appeal Log No. ISP–I–06–00572, assertedly submitted on April 23, 2006, Plaintiff alleged that Defendant Terry violated due process and retaliated against Plaintiff by assertedly confining Plaintiff in administrative segregation from December 16, 2005 until February 17, 2006, pending a DRB review for which Plaintiff supposedly did not qualify (Opposition, section 2, Ex. M).[11] In Appeal Log No. CVSP–06–009 (ISP–I–05–07569), assertedly submitted on December 11, 2005, Plaintiff alleged that Defendants Mathews and Terry violated due process and retaliated against Plaintiff by confining Plaintiff in administrative segregation on November 22, 2005 (Opposition, section 2, Ex. N).[12] Plaintiff alleges that prison officials assertedly failed to process those appeals (Opposition, section 2, p. 4).

Courts have held that, where prison officials obstruct a prisoner's ability to satisfy the exhaustion requirement, either administrative remedies are not "available" or the exhaustion requirement may be deemed satisfied. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir.2008) ("an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it") (citations omitted); *Kaba v. Stepp*, 458 F.3d 678, 684–86 (7th Cir.2006) (defendants did not meet burden to show existence of available administrative remedies, where plaintiff's evidence showed prison officials would not provide him with a grievance form if the grievance was against them); *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir.2004), *cert. denied*, 544 U.S. 920, 125 S.Ct. 1639, 161 L.Ed.2d 477 (2005); (administrative remedies deemed exhausted where prison officials failed to respond to grievance); *Hemphill v. New York*, 380 F.3d 680, 690 (2d Cir.2004) (prison official's threats could render administrative remedy unavailable); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001) (same); *cf. Bishop v. Lewis*, 155 F.3d 1094, 1096 (9th Cir.1998) (district court improperly dismissed complaint for failure to exhaust under pre-PLRA exhaustion rules, where plaintiff alleged that prison failed to respond to his internal appeal, had a practice of delaying meritorious grievances, and failed to meet standards for grievance procedures, such that "it seemed improbable that [the appeal] would ever be processed"). Defendants have produced no evidence concerning Plaintiff's allegations that prison officials interfered with Plaintiff's ability to exhaust these two administrative appeals. Therefore, Defendants have not met their burden to show that

---

**11.** The Court overrules Defendants' evidentiary objections to this exhibit.

**12.** The Court overrules Defendants' evidentiary objections to this exhibit.

Plaintiff failed to exhaust the claims contained in Appeal Log No. ISP–I–06–00572 and Appeal Log No. CVSP–06–009 (ISPI–05–07569).

However, these two appeals contained no allegations that Defendants Cortez and Mathews retaliated against Plaintiff on December 22, 2005. Therefore, these two appeals do not exhaust those claims.[13]

In sum, Defendants Cortez and Mathews are entitled to summary adjudication on the claim that these Defendants retaliated against Plaintiff on December 22, 2005. However, Defendants have not met their burden to show Plaintiff failed to exhaust his remaining retaliation claims against Defendants Cortez, Terry and Mathews.

### 2. *Exhaustion re Excessive Force and Failure to Protect Claims*

■ The record shows that the appeal in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580) was the only appeal concerning Plaintiff's excessive force and failure to protect allegations. Plaintiff has submitted a version of the "Inmate/Parolee Appeal Form" identified as Appeal Log No. CVSP–05–0741 (ISP–I–05–01580) which is not identical to Defendants' version. Plaintiff's version bears a stamp indicating that it was "received" by the Inmate Appeals Office on April 26, 2006 (Opposition, section 2, Ex. J). Defendants' version of this document does not bear this stamp (*see* Bunts Dec., Ex. C).[14]

Grannis states that the review of the "Inmate Appeals Tracking Sheet" indicated that the Appeals Branch did not receive this appeal (*id.*, ¶ 10). However, Grannis indicates that the Attorney General's office notified the Inmate Appeals Branch that Plaintiff's copy of this appeal bore an "In-

mate Appeals Branch" date stamp of April 26, 2006 (*id.*). Grannis indicates that, if an appeal contains "more than one appeal," the "main appeal" is reviewed "unless it is [otherwise] specified by the inmate," and the others are treated as "exhibits/attachments" (*id.*). According to Grannis, based on the Inmate Appeals Branch's past and current mail practices and procedures, Appeal Log No. CVSP–05–0741 (ISP–I–05–01580) "was received as an exhibit/attachment to [Plaintiff's] inmate appeal Log No. 06–0004/ISP–I–05–01564 and[ ] not as a separate appeal" (*id.*, ¶ 11). Grannis states that the second level response in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580) was returned to Plaintiff on or about February 8, 2006 (Grannis Dec., ¶ 13). The copy of the appeal attached to the Bunts declaration shows that the appeal was returned to Plaintiff on February 8, 2006 (Bunts Dec., Ex. C). Grannis concludes that, because the date stamp assertedly indicates that the Inmate Appeals Branch received that appeal on April 26, 2006 (more than 15 working days after February 8, 2006), the appeal was untimely (*id.*, ¶ 13).

Plaintiff disputes the purported February 8, 2006 second level receipt date. Plaintiff does not assert affirmatively that he received the second level review on any specific later date. Rather, Plaintiff contends that the second level appeal was still being processed at CVSP as of February 24, 2006, relying on a copy of the second level response in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580) bearing notations at the bottom of the pages stating "Feb–24–2006 10:13 Chuckawalla Valley Prison," a telephone number, and page numbers (*see* Plaintiff's Objections, p. 6,

---

13. One reasonably can interpret Appeal Log No. ISP–I–06–00572 to allege that Defendant Terry retaliated against Plaintiff on December 22, 2005.

14. The Court overrules Defendants' evidentiary objections to Plaintiff's version of this document.

fifth exhibit). However, these notations indicate only that a copy of the document was faxed on that date, not that Plaintiff first received the document on that date. The document does not suffice to controvert Defendants' evidence that Plaintiff received the second level response in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580) on February 8, 2006.

Additionally, Grannis states that a check of the Offender Based Information System ("OBIS") to determine Plaintiff's location between approximately January 23, 2006 through April 2006, showed that Plaintiff was transferred from CVSP to Ironwood State Prison as "out to court" on January 11, 2006, but returned the same day (Grannis Dec. II, ¶¶ 14–15). Grannis states that Plaintiff "had no other movement until June 1, 2006 when he changed units" (Grannis Dec. II, ¶ 15). Grannis states that a thorough check of OBIS shows "no reasonable explanation for inmate Collier's untimely submission of his inmate appeal Log No. CVSP–05–0741/ISP–05–01580 within fifteen (15) working days of receipt of the [second level review]" (Grannis Dec., ¶ 16). Plaintiff has produced no evidence to dispute these assertions. Nothing in the record shows that Plaintiff lacked the opportunity to file a timely third level appeal in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580). *See Marella v. Terhune*, 568 F.3d at 1027.

Therefore, the only rational conclusion possible from the evidence is that Plaintiff received the second level appeal in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580) on February 8, 2006, and that the third level received the appeal as an attachment or exhibit to Appeal Log No. CVSP–06–0004 (ISP–I–05–01564) on April 26, 2006. As indicated above, Plaintiff's evidence supports the inference that Plaintiff submitted Appeal Log No. CVSP–06–0004 (ISP–I–05–01564) to the third level no earlier than March 18, 2006, which was more

than 15 working days after February 24, 2006. Hence, even assuming the truth of Plaintiff's evidence concerning the date of receipt of the second level review, the evidence shows that the third level appeal in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580), submitted as an attachment or exhibit to Appeal Log No. CVSP–06–0004 (ISP–I–05–01564), was untimely, and hence not properly exhausted. *See Woodford v. Ngo*, 548 U.S. at 83–94, 126 S.Ct. 2378. Therefore, Defendants Brown, Gibbons and LaCuesta are entitled to summary judgment.

**II. *Plaintiff Has Failed to Show a Genuine Issue of Fact With Respect to All of His Retaliation Claims Except His Claim that Defendant Cortez Retaliated Against Plaintiff on August 25, 2005.***

**A. *Background***

■ Prison officials may not retaliate against inmates who exercise their First Amendment rights. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.1995); *Bradley v. Hall*, 64 F.3d 1276, 1281 (9th Cir.1995). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir.2003) (citations and internal quotations omitted).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robin-*

*son*, 408 F.3d 559, 567–68 (9th Cir.2005) (citations and footnote omitted). Plaintiff must show that the alleged retaliation was a "substantial" or "motivating" factor in the decision resulting in the adverse action. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315 (9th Cir.1989) (citation omitted). Plaintiff also must prove the absence of legitimate penological reasons for the alleged retaliatory conduct. *See Pratt v. Rowland*, 65 F.3d at 806.

Proof of motive "involves questions of fact that normally should be left for trial." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 979 (9th Cir.2002) (citation omitted). In the First Amendment context, a plaintiff generally raises a genuine issue of material fact on the question of retaliatory motive when the plaintiff "produces, in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual." *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 771 n. 21 (9th Cir.2006) (citing *Keyser v. Sacramento City Unif. Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir.2001)).

In the prison context, courts should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* at 807 (citation omitted). Because Plaintiff bears the burden of proof at trial on these claims, to defeat summary judgment Plaintiff " 'must produce at least some significant probative evidence tending to support the complaint.' " *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (citation omitted).

Under state prison regulations, an inmate may be confined in administrative segregation "[w]hen an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity...." Cal.Code Regs., tit. 15, § 3335(a).

### B. *Summary of Evidence*

Plaintiff does not dispute the following evidence submitted by Defendants:

On October 31, 2004, at Chuckawalla State Prison, Defendant Brown wrote a Rules Violation Report charging Plaintiff with masturbation (Declaration of Custodian of Records L. Crone in Support of Defendants' Motion for Summary Judgment, or Alternatively, for Summary Adjudication ["Crone Dec."], Ex. A). The Report indicates that Plaintiff testified at the hearing that he was rubbing some ointment on his genital area under his "boxers" and did not expose himself (*id.*). On November 7, 2004, Plaintiff was found not guilty of masturbation, but guilty of the lesser offense of indecent exposure (*id.*).

On November 10, 2004, Plaintiff submitted his appeal in Appeal Log No. CVSP–04–1116, alleging that Defendant Brown used profane and abusive language toward Plaintiff and issued an allegedly false Rules Violation Report on October 31, 2004 (Bunts Dec., Ex. A). On November 11, 2004, Plaintiff submitted his appeal in Appeal Log No. CVSP–04–1131, challenging Plaintiff's disciplinary conviction for indecent exposure (Bunts Dec., Ex. B).

On December 16, 2004, correctional officer Rader wrote a Rules Violation Report charging Plaintiff with masturbation (Crone Dec., Ex. B). On December 19, 2004, Plaintiff, who denied he had committed the offense, was found not guilty of masturbation, but guilty of the lesser offense of indecent exposure (*id.*).

On June 5, 2005, correctional officer Glenn wrote a Rules Violation Report charging Plaintiff with masturbation (Crone Dec., Ex. C). That day, Plaintiff was served with an "Administrative Segregation Unit Placement Notice," stating that Plaintiff would be confined in administrative segregation on the ground that Plaintiff posed a threat to the safety and security of the institution, based on the alleged masturbation incident, Plaintiff's previous offenses for the same behavior, and Plaintiff's alleged statement "You better lock me up or I'll fuck up any female staff I see!" (Crone Dec., Ex. D; Declaration of B. Mathews in Support of Defendants' Motion for Summary Judgment, or Alternatively, for Summary Adjudication ["Mathews Dec."], ¶ 6, Ex. A).

On June 9, 2005, the Institutional Classification Committee ("ICC") issued an order noting that the June 5, 2005 masturbation charge required referral to the Riverside County District Attorney for possible prosecution, and ordering Plaintiff retained in administrative segregation "pending completion of the District Attorney Referral and disciplinary processes" (Crone Dec., Ex. H).

At the hearing on the masturbation charge, Plaintiff allegedly said: "I'm guilty. I did that." (*id.*). On July 9, 2005, Plaintiff was found guilty of masturbation (Crone Dec., Ex. C).

On August 3, 2005, Plaintiff submitted his appeal in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580), alleging that Defendant Brown manipulated Defendant Gibbons into assaulting Plaintiff on July 19, 2005[sic] in retaliation for Plaintiff's previous grievance against Brown and that Defendant LaCuesta assertedly failed to intervene to protect Plaintiff (Bunts Dec., Ex. C; Opposition, section 1, Ex. F).

On August 18, 2005, Plaintiff was placed in administrative segregation "to preserve the integrity of an investigation involving your allegations of misconduct by CVSP's Administrative Segregation Staff following your Administrative Segregation placement of 06/05/05" (Crone Dec., Ex. E; Mathews Dec., ¶ 7, Ex. B). The administrative segregation notice indicated Plaintiff would be retained in the Administrative Segregation Unit at Ironwood State Prison pending the conclusion of the investigation and review by the CVSP Classification Committee.

Also on August 18, 2005, Plaintiff was transferred to Ironwood State Prison (TAC, p. 11; Mathews Dec., ¶ 8). Plaintiff was placed in administrative segregation at that prison purportedly "to preserve the integrity of an investigation involving [Plaintiff's] allegations of misconduct by CVSP's Administrative Segregation Staff following [Plaintiff's] Administrative Segregation placement on 06/05/05" (Crone Dec., Ex. F; Mathews Dec., ¶ 8, Ex. C). Plaintiff was notified he would be retained in administrative segregation pending the conclusion of the investigation and review by the Institutional Classification Committee (*id.*).

On August 25, 2005, the ICC, chaired by Defendant Cortez, reviewed the August 18, 2005 administrative segregation placement and elected to retain Plaintiff in administrative segregation placement, purportedly to preserve the integrity of the investigation into Plaintiff's allegations of CVSP staff misconduct (Crone Dec., Ex. I; Declaration of J. Cortez in Support of Defendants' Motion for Summary Judgment, or in the Alternative, for Summary Adjudication ["Cortez Dec."], ¶ 8, Ex. A; Opposition, section 2, Ex. A).

On November 22, 2005, a new "Administrative Segregation Unit Placement Notice" was served on Plaintiff (Crone Dec., Ex. G; Mathews Dec., ¶ 9, Ex. D). The order, signed by a correctional officer Riddle, indicated that, on August 23, 2005, the Riverside County District Attorney's Of-

fice had accepted the case for prosecution. The order also stated:

> Depending on the outcome of your case and your history of sexual misconduct, could lead [sic] to a possible referral to the Director's Review Board (DRB) for an indeterminate Segregation Housing Unit (SHU) term. The aforementioned information, along with your statement of "You better lock me up or I'll fuck up any female staff I see!" noted in the CDC–114D, dated 06/05/05, makes your release to the general population a threat to the safety and security of the institution.

(Crone Dec., Ex. G; Mathews Dec., Ex. D).

Under the heading "REASON(S) FOR PLACEMENT (*PART A*)," the notice contained check marks in the boxes stating: (1) "presents an immediate threat to the safety of self or others"; (2) "jeopardizes integrity of an investigation of alleged serious misconduct or criminal activity"; and (3) "endangers institution security." Defendant Mathews reviewed and approved the placement on November 23, 2005 (Mathews Dec., ¶ 9).

On December 16, 2005, the ICC, chaired by Defendant Cortez and including Defendant Mathews as a member, ordered Plaintiff released from administrative segregation to "CVSP–II, Facility 'D' " (Crone Dec., Ex. H; Mathews Decl., ¶ 13, Ex. E; Cortez Dec., ¶ 9, Ex. B; Opposition, section 2, Ex. F).

On December 22, 2005, the ICC, chaired by Defendant Cortez and including Defen-dants Mathews and Terry as members, amended the December 16, 2006 order (Crone Dec., Ex. K; Mathews Dec., ¶ 14, Ex. F; Opposition, section 2, Ex. B). The ICC noted that a jury trial date in the criminal proceeding was set for January 11, 2005.[15] The ICC also stated that Plaintiff's rules violations for indecent exposure, sexual misconduct and masturbation met the criteria for a DRB referral for an indefinite SHU term. The ICC indicated that Plaintiff's classification score made him a "Level III inmate inappropriately housed at CVSP–II" (Crone Dec., Ex. K). The ICC amended the December 16, 2005 action to retain Plaintiff in administrative segregation at Ironwood State Prison pending DRB review for an indeterminate SHU term and the outcome of the criminal proceedings.

Plaintiff alleges that he was released from administrative segregation on July 28, 2005 (Opposition, section 2, p. 6). Plaintiff has submitted a document indicating that, on July 28, 2005, the ICC, of which Defendant Cortez was a member, released Plaintiff from administrative segregation (Opposition, section 2, Ex. C). Plaintiff attaches to his Opposition a document indicating that, on May 5, 2006, an ICC Committee determined that Plaintiff's case "did not rise to the level of a DRB referral" and recommended that Plaintiff be transferred out of administrative segregation (Opposition, section 2, Ex. D). Defendants have objected to these documents, but do not contend that the events described therein did not occur.[16]

---

**15.** It appears that Plaintiff's criminal proceeding resulted in a conviction. The Court takes judicial notice of the records in *People v. Collier,* Riverside County Superior Court case number, BLM023371, available on that court's website at www.riverside.courts.ca. gov. These records show that, on September 28, 2007, a jury acquitted Plaintiff of felony indecent exposure, but found Plaintiff guilty of misdemeanor indecent exposure. At sen-tencing on October 23, 2007, the court dismissed the felony count and sentenced Plaintiff to a time-served jail term of 360 days. The docket also shows that Plaintiff's conviction was affirmed on appeal on September 25, 2008.

**16.** Defendants' objections to these documents are overruled.

## C. *Retaliation Claim against Defendant Cortez*

 Plaintiff alleges that Defendant Cortez confined Plaintiff in administrative segregation for ten months in retaliation for Plaintiff's grievance concerning the alleged July 18, 2005 assault on Plaintiff (TAC, Claim Two, p. 8). Cortez states that Plaintiff assertedly was not retained in administrative segregation "for improper or illegal reasons as alleged in his Third Amended Complaint" (*id.*, ¶ 12).

As indicated above, the evidence shows Cortez chaired the ICC which issued the August 25, 2005, December 16, 2005 and December 22, 2005 segregation review orders. There is no evidence that Cortez participated in the decision reflected in the November 22, 2005 order (although the December 22, 2005 order mentions the November 22, 2005 order). As discussed above, Plaintiff has not exhausted claims against Cortez concerning the December 16, 2005 and December 22, 2005 orders. The remaining issue is whether Plaintiff has shown a genuine issue of fact regarding whether Cortez retaliated against Plaintiff on August 25, 2005.

Cortez alleges he did not have any information or knowledge concerning any complaint filed by Plaintiff *against Cortez* when the ICC conducted its reviews on August 25, 2005 and December 16, 2005 (Cortez Dec., ¶ 11; emphasis added). However, this allegation does not refute the contention that Cortez caused Plaintiff to be placed and retained in administrative segregation in retaliation for Plaintiff's grievances against other prison officials.

The undisputed evidence shows that the August 25, 2005 order was issued in response to, and therefore "because of," Plaintiff's appeal in Appeal Log No. CVSP–05–0741 (ISP–I–05–01580), alleging that Defendants Brown, LaCuesta and Gibbons assertedly assaulted Plaintiff. The stated justification for the August 25, 2005 order was not that Plaintiff posed a threat to the safety and security of the institution. Rather, the sole stated justification was that Plaintiff's confinement in administrative segregation was purportedly necessary to preserve the integrity of the investigation into Plaintiff's allegations of staff misconduct (*see* Crone Dec., Ex. I). "Maintaining the integrity of an investigation into serious institutional misconduct is a legitimate penological interest." *Bryant v. Cortez*, 536 F.Supp.2d 1160, 1169 (C.D.Cal.2008); *see also Draper v. Harris*, 245 Fed.Appx. 699 (9th Cir.2007).

However, *at the time the order was issued, Plaintiff was no longer confined at CVSP*. Defendants provide no explanation of the purported necessity of confining Plaintiff in administrative segregation at *Ironwood State Prison* in order to preserve the integrity of an investigation into allegations of staff misconduct at *CVSP*. Nothing in the record indicates that, at Ironwood State Prison, Plaintiff would have had the ability to interfere in any way with the investigation at CVSP if allowed into the general population at Ironwood State Prison. The record, construed most favorably to Plaintiff, could permit a reasonable inference that the sole stated justification for the August 25, 2005 order was pretextual and that the real reason Cortez approved Plaintiff's administrative segregation placement at Ironwood State Prison was to retaliate against Plaintiff for Plaintiff's allegations of staff misconduct at CVSP.[17] *See Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir.2003) (summary judgment for defendant employer inappropriate, where plaintiff's pay reduction and eventual termination for allegedly violating employer's cell phone use policy occurred three and five months respective-

---

17. Of course, the Court does not decide this disputed issue of fact at this time.

ly after protected speech, and evidence showed employer inconsistently enforced its cell phone use policy). Therefore, Defendant Cortez is not entitled to summary adjudication of Plaintiff's claim that Cortez ordered Plaintiff confined in administrative segregation on August 25, 2005 in retaliation for Plaintiff's grievance.

■ The defense of qualified immunity protects government officials from liability for civil damages as long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 129 S.Ct. at 815 (citation and internal quotations omitted).

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (*"Saucier"*), the Supreme Court announced a two-step sequence for determining qualified immunity claims. Under the *Saucier* formulation, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201, 121 S.Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.*

Recently, in *Pearson v. Callahan*, the Supreme Court ruled that *Saucier*'s two-step sequence is not mandatory. *Pearson*

*v. Callahan*, 129 S.Ct. at 818. Rather, the Court may exercise its "sound discretion" in deciding which of the two steps to address first, "in light of the circumstances in the particular case at hand." *Id.*

As indicated above, the evidence, construed in the light most favorable to Plaintiff, could permit a rational jury to conclude that Defendant Cortez approved Plaintiff's August 25, 2005 administrative segregation placement in retaliation for Plaintiff's grievance. In 2005, a reasonable prison official would have known that retaliating against a prisoner for filing a prison grievance was unlawful. "[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Hydrick v. Hunter*, 500 F.3d 978, 991 (9th Cir.2007), *pet. for cert. filed*, 76 U.S.L.W. 3410 (Jan. 17, 2008) (quoting *Pratt v. Rowland*, 65 F.3d at 806 & n. 4; internal quotations omitted); *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir.1995) (at the time of defendants' conduct, "the law clearly established that defendants cannot transfer a prisoner from one correctional institution to another in order to punish the prisoner for exercising his First Amendment right to pursue civil rights litigation in the courts"; citation omitted).

"Where the [defendant's] entitlement to qualified immunity depends on the resolution of disputed issues of fact in [the defendant's] favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir.2003), *cert. denied*, 543 U.S. 811, 125 S.Ct. 43, 160 L.Ed.2d 14 (2004) (citation omitted). Because a genuine issue of fact exists regarding whether Defendant Cortez retaliated against Plaintiff for filing an appeal alleging prison staff misconduct by approving the August 25, 2005 administrative segregation placement, Defendant Cortez is not entitled to summary judgment on the issue of qualified

immunity. *See DiRuzza v. County of Tehama*, 206 F.3d 1304, 1314–15 (9th Cir.), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 624, 148 L.Ed.2d 533 (2000) (summary judgment inappropriate on retaliation claim where there were disputed issues of material fact regarding whether retaliation was a substantial or motivating factor in defendants' conduct); *Chatman v. Tyner*, 2009 WL 498958, at *14 (E.D.Cal. Feb. 26, 2009), *adopted*, 2009 WL 901129 (E.D.Cal. March 31, 2009) (defendants not entitled to summary judgment on retaliation claim, where plaintiff identified factual disputes concerning whether defendants placed plaintiff in administrative segregation for retaliatory purposes).

### D. Retaliation Claim Against Defendant Terry

■ Defendant Terry claims to have had no involvement with Plaintiff's original placement in administrative segregation at CVSP or at Ironwood State Prison (*id.*, ¶ 5).[18] Plaintiff does not controvert this statement, but alleges that Defendants Cortez and Terry "produced and represented" an allegedly "illegal" lockup order on November 22, 2005 and confined Plaintiff in administrative segregation for ten months (Opposition, p. 8).[19] However, the exhibit to which Plaintiff refers in support of this contention, the November 22, 2005 segregation order, does not bear Terry's name or otherwise indicate Terry was involved in that decision to retain Plaintiff in administrative segregation. Hence, Plaintiff has not produced evidence sufficient to raise a genuine issue of fact regarding whether Defendant Terry caused Plaintiff to be confined in administrative segregation on November 22, 2005 in retaliation for Plaintiff's grievances.

Plaintiff further alleges that Terry "took Plaintiff to classification more then [sic] five times in ten month period" (Opposition, p. 8). In support of this assertion, Plaintiff submits copies of four documents titled "Notice of Classification Hearing," purportedly signed by Terry, advising Plaintiff of classification hearings on December 8, 2005, December 22, 2005, February 17, 2006 and a date in April of 2006 (Opposition, Ex. G). These documents do not indicate that Terry was involved in any decision at any hearing conducted on those dates, and hence do not support Plaintiff's retaliation allegations against Terry.

The December 22, 2005 order purported to amend the December 16, 2005 order, which had authorized Plaintiff's release from administrative segregation. Plaintiff alleges that Defendants Terry and Mathews pressured Cortez to change Cortez' mind and retain Plaintiff in administrative segregation on December 22, 2005. However, Plaintiff has produced no evidence showing that Terry exerted any such influence on Cortez or anyone else.

The December 22, 2005 order shows that Terry was a member of the ICC which issued that order. As indicated above, the December 22, 2005 order amended the December 16, 2005 order, and directed that Plaintiff be retained in administrative segregation based on Plaintiff's disciplinary history, the pending criminal proceedings (in which a trial date

---

18. Defendant Terry claims to have had no knowledge of any complaint filed by Plaintiff against Terry when the ICC Committee conducted its reviews on August 25, 2005, December 16, 2005 and December 22, 2005 (*see* Declaration of B. Terry in Support of Defendants' Motion for Summary Judgment, or Alternatively, for Summary Adjudication, ¶ 6). This allegation is irrelevant to Plaintiff's claim that Terry assertedly retaliated against Plaintiff for Plaintiff's grievances against other prison officials.

19. Plaintiff does not allege, and the record does not show, that Terry was involved in the August 2005 decisions to place Plaintiff in administrative segregation.

had been set), and a possible referral to the DRB for potential imposition of an indefinite SHU term because of Plaintiff's "in custody sexual behavior" (*see* Crone Dec., Ex. K).

In some instances, the circumstance that prison officials supported a housing order with the same evidence previously found insufficient to support such an order can constitute proof, although not conclusive proof, of retaliation. *See, e.g., Bruce v. Ylst,* 351 F.3d at 1288. Here, however, the December 16, 2005 order did not mention the possible DRB referral, or the fact that a jury trial had been set in the criminal case, or the apparent fact that Plaintiff's classification score did not merit a return to "CVSP–II" custody status. Reconsideration of the December 16, 2005 order in light of this other evidence does not, standing alone, raise a genuine issue regarding retaliation. Plaintiff does not dispute his disciplinary history or the then-ongoing proceedings in the criminal case, but contends that no policy existed for DRB referral in cases involving an inmate's alleged sexual misconduct (Opposition, section 2, p. 8). Plaintiff relies on a discovery response, bearing a proof of service dated March 7, 2008, in which Defendant Terry purportedly stated: "No policy exists for the Department Review Board concerning Security Housing Unit ("SHU") placement for sexual misconduct" (*see* Opposition, section 2, Ex. H). However, that discovery response, couched in the present tense, does not refute the existence in 2005 of the DRB referral policy mentioned in the December 22, 2005 segregation order.

The December 22, 2005 segregation order shows on its face the existence of several legitimate penological reasons for Plaintiff's retention in administrative segregation, *i.e.,* Plaintiff's prior disciplinary history, the pending criminal proceedings, and the possible DRB referral. Under the circumstances, Plaintiff's evidence does not suffice to raise a genuine issue of fact that these stated reasons constituted a pretext for retaliation.

In sum, Plaintiff has not produced evidence sufficient to raise a genuine issue of fact concerning Terry's alleged retaliation. Hence, Defendant Terry is entitled to summary judgment.

### E. *Retaliation Claim Against Defendant Mathews*

Plaintiff alleges that Defendant Mathews retaliated against Plaintiff by approving the November 22, 2005 administrative segregation order and by retaining Plaintiff in administrative segregation for ten months (Opposition, p. 8). Mathews denies that Mathews approved Plaintiff's confinement in administrative segregation in retaliation for Plaintiff's grievances against CVSP or Ironwood State Prison staff (*id.,* ¶ 17).[20]

As indicated above, Mathews approved the November 22, 2005 segregation order, which assertedly was based on a determination that Plaintiff posed an "immediate threat to the safety of self and others," jeopardized the integrity of an investigation of alleged serious misconduct or criminal activity, and endangered institution security (*see* Crone Dec., Ex. G). The order noted that the Riverside County District Attorney's Office had accepted the alleged masturbation case for prosecution, indicated that Plaintiff's history of sexual misconduct could lead to a DRB referral for an indeterminate SHU term, and recorded Plaintiff's alleged statement "You better lock me up or I'll fuck up any female staff

---

**20.** Mathews' allegations that at various times Mathews had no knowledge of any complaint filed by Plaintiff against the correctional staff at Ironwood State Prison or against Mathews (*see* Mathews Dec., ¶ 16) are irrelevant to Plaintiff's allegations that Defendant assertedly retaliated against Plaintiff for Plaintiff's grievances against other prison officials.

I see!" (*id.*). On its face, the November 22, 2005 order showed several legitimate reasons supporting the conclusion that Plaintiff posed a threat to the safety and security of the institution.[21]

Plaintiff alleges generally that the November 22, 2005 order was illegal and retaliatory (*see* Opposition, section 2, p. 8). Such conclusory allegations are insufficient to withstand summary judgment. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir.1989). Plaintiff has failed to produce "significant probative evidence" supporting his allegation that Defendant Mathews' approval of the November 22, 2005 segregation order was retaliatory.

Plaintiff also relies on Defendant Mathews' purported discovery response, bearing a proof of service dated March 7, 2008, in which Defendant purportedly stated: "No policy exists for the Department Review Board concerning Security Housing Unit ("SHU") placement for sexual misconduct" (*see* Opposition, Ex. I). Again, that discovery response was couched in the present tense, and does not refute the existence in 2005 of the DRB referral policy mentioned in the November 22, 2005 and December 22, 2005 segregation orders.

For all of these reasons, Plaintiff has failed to raise a genuine issue of material fact on the question of whether Mathews retaliated against Plaintiff as alleged in the Third Amended Complaint.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting in part and denying in part Defendants' Motion for Summary Judgment; (3) specifying the following facts as being not genuinely at issue: (a) Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Brown, Gibbons and LaCuesta, and with respect to Plaintiff's claim that Defendant Cortez retaliated against Plaintiff on December 22, 2005; (b) Defendants Terry and Mathews did not retaliate against Plaintiff as alleged in the Third Amended Complaint; (c) Defendant Cortez did not retaliate against Plaintiff as alleged in the Third Amended Complaint with respect to any of Cortez' actions except, possibly, with respect to Cortez' approval of the August 25, 2005 administrative segregation order; (4) granting summary judgment in favor of Defendants Brown, Gibbons, Terry and Mathews; (5) dismissing the action without prejudice as against Defendants Brown, Gibbons and LaCuesta; (6) dismissing the action with prejudice as against Defendants Terry and Mathews; and (7) granting summary adjudication in favor of Defendant Cortez on all of Plaintiff's claims against Cortez except Plaintiff's claim that Cortez allegedly retaliated against Plaintiff by approving the August 25, 2005 administrative segregation order.[22]

---

**21.** The November 22, 2005 order also mentioned the integrity of an investigation into allegations of misconduct by CVSP staff. However, unlike the August 25, 2005 order, the November 22, 2005 order clearly articulated a plainly legitimate and overriding ground for the decision, *i.e.,* the threat to institutional security. A rational jury could not infer from the circumstances that a retaliatory motive played any part in the November 22, 2005 order.

**22.** In light of this recommendation, the Court need not, and does not, address the other arguments contained in Defendants' Motion.